[Cite as *Fiocca v. AIM Energy, L.L.C.*, 2019-Ohio-5044.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

JOHN M. FIOCCA,

Plaintiff-Appellant,

v.

AIM ENERGY, LLC ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 CA 0930**

---

Civil Appeal from the
Court of Common Pleas of Carroll County, Ohio
Case No.14CVH27890

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Robert Tschool, Atty. James Mathews,* 400 South Main Street, North Canton, Ohio 44720, for Plaintiff-Appellant, and

*Atty. William Taylor, Atty. Scott Eickelberger, Atty. Ryan Linn*, Kincaid, Taylor and Geyer, 50 North Fourth Street, P.O. Box 1030, Zanesville, Ohio 43702, for Defendants-Appellees.

Dated:
December 6, 2019

**DONOFRIO, J.**

{¶1}   Plaintiff-appellant, John Fiocca, appeals from a Carroll County Common Pleas Court judgment granting summary judgment in favor of defendants-appellees, AIM Energy, LLC, John Miller, and Steven Nicholson, on appellant's action seeking a declaratory judgment that certain oil and gas leases cancelled due to the lack of production in paying quantities.

{¶2}   This case involves two oil and gas leases encumbering 126 acres of property in Orange Township in Carroll County (the Property).  Appellant is the surface owner of the Property.  Appellant also owns a one-third interest in the mineral rights. Defendant Cravat Coal (Cravat) owns the other two-thirds interest in the mineral rights.

{¶3}   Appellant's and Cravat's predecessors in interest entered into oil and gas leases in 1978.  The "Tope Lease" was dated May 13, 1978.  The "Conotton Lease" was dated May 15, 1978.   The lessee of both leases was L&M Associates, Inc., which is appellees' predecessor in interest.  The Leases stated:

> Both the Tope Lease and the Conotton Lease are to continue in force and the rights granted hereunder be quietly enjoyed by the Lessee for a term of 1 year and so much longer thereafter as oil or gas or their constituents shall be found on the premises in paying quantities in the judgment of the Lessee or as the premises shall be operated by the Lessee in the search for oil and/or gas.

(Tope Lease ¶ 3; Conotton Lease ¶ 3).  At issue in this appeal are certain later provisions that appear in the Leases.

{¶4}   The Tope Lease contains a provision stating:

> NOT WITHSTANDING any language as aforesaid set forth the parties hereto agree as follows:

19. Within one year after the completion of the first well drilled on subject lease a second well must be commenced or all land leased hereunder shall revert to the lessor save and except the 40 acres immediately surrounding the first well. Thense [sic.] at least one well per year must be drilled until all acreage leased hereunder is utilized and any unused acreage shall revert to the lessor save and except forty acres surrounding drilled wells.

(Tope Lease ¶ 19).

{¶5} The Conotton Lease similarly provides:

1.  Notwithstanding any language to the contrary contained in the printed lease form, it is agreed and understood that the lessee must drill two (2) wells per year for oil and/or gas to maintain this lease in full force and effect under the penalty of forfeiting all acreage under the lease which has not been "earned" earlier.

2. "Earned acreage", as used herein, shall mean that each well drilled shall cause forty (40) acres generally surrounding a well, but to be selected by the lessee, to be placed in the category of the extended term of the lease as shown in paragraph 3 of the lease form.

(Conotton Lease Exhibit A, ¶ 1-2).

{¶6} On June 20, 2014, appellant filed an action for declaratory judgment and to quiet title to the oil and gas rights. Appellant sought to have the Leases declared void ab initio.[1] Alternatively, he sought to have the Leases cancelled asserting the wells on the Property are not producing in paying quantities and that appellees have failed to fully develop the Property.

{¶7} Cravat filed a cross claim also seeking to quiet title to the oil and gas rights. The case proceeded for some time as parties and claims were added and dismissed and certain counsel was disqualified.

---

[1] Appellant's claim that the Leases were void ab initio was rendered meritless by the Ohio Supreme Court's judgment in *State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Court of Appeals*, 145 Ohio St.3d 180, 2016-Ohio-178, 47 N.E.3d 836. This matter proceeded solely on the remaining claims.

{¶8}   On November 30, 2018, appellees filed a motion for summary judgment. They alleged no genuine issues of material fact existed and that the uncontroverted evidence demonstrated that the Leases were held by production of oil and gas in paying quantities.  Appellant filed a memorandum in opposition arguing that appellees were unable to prove that each of the four separate wells on the Property was producing oil and gas in paying quantities so as to continue the Leases.  Appellant also argued that the modifications to the Leases was such that each well could only hold the Lease for the 40 acres surrounding each particular well as opposed to holding the Lease for the entire 126 acres.

{¶9}   The trial court granted summary judgment in favor of appellees.  It determined that all four wells were producing in paying quantities.  The court noted that because of the common metering system and common tank battery, it could not determine the actual production rates for each individual well.  The court noted that neither Lease required separate metering.  The court found that appellant presented no evidence to demonstrate that a specific well was not producing.  It found that the only evidence demonstrated that the wells were producing in paying quantities in accordance with the terms of the Leases.  The court pointed to the production reports, which demonstrated production each year from 1984 through 2018.  It also noted that a schedule of net revenue covering all four wells showed that the wells made a profit from 2007 through 2018.  The court based its determination on the evidence of the amount of gas produced and the fact that appellant has continuously received royalty checks.  Additionally, the court found there was no implied covenant to develop the land, citing provisions in both Leases that no covenants were to be read into the Leases.

{¶10}  Appellant filed a timely notice of appeal on February 25, 2019.  He now raises two assignments of error.

{¶11}  An appellate court reviews a summary judgment ruling de novo.  *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.  Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

{¶12}  A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party.

*Mercer v. Halmbacher*, 9th Dist. Summit No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

{¶13} Appellant's first assignment of error states:

THE TRIAL COURT COMMITTED ERROR BY IGNORING THE TYPEWRITTEN ADDITIONS TO THE LEASE.

{¶14} Appellant asserts that paragraph 19 in the Tope Lease specifies what acreage may be held by oil and gas production under the Lease. He contends that the intent expressed in paragraph 19 is that each well required to be drilled can only hold the 40 acres surrounding that particular well. Therefore, the first well could only hold the Tope Lease as to the 40 acres surrounding it. Likewise, appellant argues, the second well, then the third, then the fourth, could only hold the 40 acres surrounding each particular well.

{¶15} Appellant's argument suggests that the Tope Lease contain a "Pugh clause." A "Pugh clause" is meant to protect the lessor of mineral rights from a situation where a large tract of land is held under the lease by way of oil or gas production on a very small portion of the land. *Summitcrest, Inc. v. Eric Petroleum Corp.*, 7th Dist. Columbiana No. 12 CO 0055, 2016-Ohio-888, ¶ 30. A Pugh clause is used to maintain the lease only as to that part of the lease acreage actually producing. *Id.* It severs producing acreage from non-producing acreage, even though leased lands are normally considered indivisible. *Id.*

{¶16} We need not determine whether Paragraph 19 of the Tope Lease constituted a Pugh clause, however. The summary judgment evidence demonstrated that all terms of Paragraph 19 were met so that none of the acreage reverted to appellant.

**{¶17}** To their summary judgment motion, appellees attached the affidavit of appellee Steven Nicholson, who is a member of appellee AIM Energy, which is the operator of the Tope and Conotton Leases. Nicholson averred that AIM operates four wells on the property covered by the Leases. (Nicholson Aff. ¶ 4). Nicholson attached a copy of the plat of the wells. (Nicholson Aff. Ex. C). The plat shows four wells, each located in a different fourth of appellant's 126-acre plot of land. (Nicholson Aff. Ex. C). Nicholson averred that the four wells were drilled according to the schedules contained in the Tope and Conotton Leases and that all of the acreage was earned and placed in the category of the extended terms of the Leases. (Nicholson Aff. ¶ 5).

**{¶18}** Appellant did not submit any evidence to the contrary. Thus, because appellees also met the requirement of "production in paying quantities," which is addressed in appellant's second assignment of error, the trial court did not err in granting summary judgment in their favor.

**{¶19}** Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶20}** Appellant's second assignment of error states:

> THE TRIAL COURT ERRED IN FINDING THAT COMMON METERING SATISFIED PRODUCTION IN PAYING QUANTITIES FOR ALL THE WELLS.

**{¶21}** Here appellant contends the trial court should not have found that common metering was sufficient to determine that the wells were producing in paying quantities in order to hold the Tope and Conotton Leases. He claims this court has found that common metering cannot hold multiple wells for the purpose of production in paying quantities. Appellant cites to *Lang v. Weiss Drilling Co.*, 7th Dist. Monroe No. 15 MO 0005, 2016-Ohio-8213.

**{¶22}** In *Lang*, in addressing the appellants' argument that the trial court erred in failing to recognize that common metering is an accepted practice for measuring oil and gas production, this court stated:

[The appellants] presented evidence that common metering can be an accepted practice by some oil and gas companies for purposes of their internal records and paying royalties. But just because this practice is accepted by some oil and gas companies does not mean that the trial court had to accept it in this case as a valid means to measure production for purposes of whether a well is producing paying quantities of gas. It is reasonable for the court to require a more accurate method of measuring gas production. The court must be able to quantify production from the particular well at issue. It should not be required to guesstimate the amount of gas attributable to the well in question when the party responsible for the metering has chosen to use a common meter for multiple wells as opposed to individual meters for each well.

*Id.* at ¶ 43.

**{¶23}** Appellant contends the trial court's judgment here is in direct contradiction with this court's findings in *Lang*. He claims the trial court placed the burden of proof on him to demonstrate each well was not producing under the common meter. Instead, appellant asserts, the court should have required appellees to prove that each well was producing in paying quantities. He claims the common metering system did not meet this burden. Appellant argues that with the common metering system, neither the court nor the parties could ascertain specific production form each of the four wells.

**{¶24}** In *Lang*, we did not hold that common metering can never be considered in a paying quantities analysis. Instead, we found that the trial court was free to require a more accurate method of measuring oil and gas production. We further found that the trial court should be able to determine production from the well at issue instead of guesstimating how much oil and gas from a common meter is attributable to the well at issue.

**{¶25}** Moreover, this case contains a different set of facts than *Lang*. In *Lang,* the trial court had to determine whether a single well, which ran through a common meter with two to five other wells, was producing in paying quantities so as to hold the lease at issue. But in this case all four wells that run through the common meter go to the Tope and Conotton Leases and surrounding property. No other wells run through that common

meter as was the case in *Lang*. In this case, it is irrelevant if the production is coming from one well of the four wells or all four wells. In either instance, the Leases are being held. Thus, the common metering is not an issue here.

**{¶26}** Appellant contends that paragraph 19 of the Tope Lease and exhibit A of the Conotton Lease require production in paying quantities from each individual well in order to hold the 40 acres surrounding each well. Appellant misconstrues the Leases, however.

**{¶27}** Both the Tope and Conotton Leases provide that they will continue for a term of one year and then "so much longer thereafter as oil or gas or their constituents shall be found *on the premises* in paying quantities in the judgment of the Lessee or as the premises shall be operated by the Lessee in the search for oil and/or gas." (Tope Lease ¶ 3; Conotton Lease ¶ 3; Emphasis added). Nowhere in this habendum clause does it specify that the oil and gas in paying quantities must come from any particular number of wells. The Leases only require that oil and gas are found on the premises in paying quantities.

**{¶28}** Moreover, paragraph 19 of the Tope Lease sets out when wells are to be drilled on the Property and under what circumstances acreage will revert to the lessor. Nowhere in this provision is the requirement of production in paying quantities mentioned. Likewise, exhibit A of the Conotton Lease provides how many wells must be drilled in order to maintain the Lease and to avoid acreage reverting to the lessor. Again, nowhere in this provision is there any mention of production in paying quantities.

**{¶29}** We will not read terms into the Leases that do not exist. Because neither paragraph 19 of the Tope Lease nor exhibit A of the Conotton Lease require production in paying quantities from each well drilled on the Property in order to hold its respective lease, we must conclude that the trial court correctly interpreted the Leases.

**{¶30}** Furthermore, appellees submitted undisputed evidence that the wells on the Property, though common metered with each other, have been producing oil and gas in paying quantities. Nicholson averred that appellant has been receiving and cashing royalty checks and only stopped cashing the checks upon commencing this action. (Nicholson Aff. ¶ 8). Nicholson also attached copies of the Ohio Department of Natural Resources Well Summaries Production reports for all four wells from 1984 through 2017.

Case No. 19 CA 0930

(Nicholson Aff. ¶ 5, Exs. D, E, F, G). And Nicholson attached a copy of the Schedule of Net Revenue for the Tope Lease, which set out royalties paid and revenue earned. (Nicholson Aff. ¶ 9, Ex. H). All evidence demonstrated production in paying quantities. Appellant did not present any evidence to contradict appellees' evidence.

**{¶31}** Because no genuine issues of material fact exist, the trial court properly granted summary judgment in favor of appellees.

**{¶32}** Accordingly, appellant's second assignment of error is without merit and is overruled.

**{¶33}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.

D'Apolito, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**