COMER, ADMR. OF ESTATE OF CLARK, APPELLEE, *v.* RISKO;
KNOX COMMUNITY HOSPITAL, APPELLANT.

[Cite as *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559.]

(No. 2004–0284—Submitted February 16, 2005—Decided September 14, 2005.)

LUNDBERG STRATTON, J.

{¶ 1} The narrow issue before us is whether, within the constraints of *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46, a viable claim exists against a hospital under a theory of agency by estoppel for the negligence of an independent-contractor physician when the physician cannot be made a party because the statute of limitations has expired.

{¶ 2} We hold that agency by estoppel is a derivative claim of vicarious liability whereby the liability of the hospital must flow through the independent-contractor physician. Consequently, there can be no viable claim for agency by estoppel if the statute of limitations against the independent-contractor physician has expired.

{¶ 3} This case arose when plaintiff, Patricia L. Clark, now deceased, filed a complaint against James H. Risko, M.D., and others for medical negligence, including the failure to timely diagnose and treat cancer. (The administrator of Clark's estate, Carmen Comer, is now the appellee before this court.) She asserted a cause of action against Knox Community Hospital ("Knox") based on a theory of agency by estoppel. The plaintiff alleged that she had relied on Knox to provide necessary and proper radiology services, including the interpretation of x-rays by Knox employees and/or agents.

{¶ 4} The plaintiff further alleged that she underwent chest x-rays at Knox on July 1 and September 2, 1998. The x-rays, Knox later established, were interpreted by Mary J. Wall, M.D., and Alan P. Schlesinger, M.D. Their reports did not mention the presence of an enlarged mass on the x-ray films. It was not until the plaintiff underwent a third chest x-ray on January 27, 1999, that doctors detected a mass subsequently diagnosed as a carcinoma.

{¶ 5} The plaintiff did not name Dr. Wall or Dr. Schlesinger as defendants in the complaint filed on July 17, 2000, or the amended complaint filed on December 26, 2001. Knox moved for summary judgment on the basis that no viable claim existed against the hospital because the statute of limitations against Drs. Wall and Schlesinger, the primary tortfeasors, had expired. The trial court granted the motion and dismissed Knox as a defendant.

{¶ 6} The court of appeals reversed the summary judgment as to Knox and remanded the cause for further proceedings. The appellate court held that "a plaintiff may pursue a claim based upon agency by estoppel against a hospital even if it has not named the independent contractor tortfeasor as a party and/or a claim against the tortfeasor is not viable, if the hospital meets the criteria of [*Clark v. Southview*, 68 Ohio St.3d 435, 628 N.E.2d 46]." 2003-Ohio-7272, ¶ 20.

{¶ 7} The cause is before this court upon the acceptance of a discretionary appeal.

{¶ 8} Because this case was decided upon summary judgment, we review this matter de novo, governed by the standard set forth in Civ.R. 56. *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038.

{¶ 9} Plaintiff's sole theory of liability against Knox is based upon an agency-by-estoppel relationship between the hospital and Drs. Wall and Schlesinger, who allegedly misinterpreted plaintiff's x-ray films. The doctors, independent contractors who provided their services pursuant to a contract with the hospital, were not named as parties to this action. The statute of limitations expired, and their liability, if any, was extinguished.

{¶ 10} The appellate court held as a matter of law that "the agency by estoppel claim is a direct claim against the hospital and it is irrelevant whether the statute of limitations has run against the independent contractor."[1] 2003-Ohio-7272, ¶ 13. The appellate court based its decision on this court's expanded definition of agency by estoppel in *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 628 N.E.2d 46. *Southview* held: "A hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice of knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care." Id. at syllabus. The appellate court reasoned that *Southview* created independent liability for hospitals and implied that courts should make no distinction between independent contractors and employees of hospitals.

---

1. The court did not reach the ultimate issue whether the hospital satisfied the *Clark v. Southview* criteria for an agency relationship.

{¶ 11} The sole proposition of law advanced by Knox is that a hospital's liability for the actions of an independent-contractor physician is based upon vicarious liability and must flow through the independent physician. Thus, Knox argues, the appellate court's creation of a new and direct cause of action that would impose primary liability upon a hospital violates the agency principles that underlie vicarious liability. According to Knox, if the underlying liability of the independent contractor is extinguished, it follows that the hospital's secondary liability is likewise extinguished.

## I. HISTORY OF HOSPITAL LIABILITY

{¶ 12} Historically, in Ohio, a hospital was immune from liability for the negligence of its employees under the doctrine of charitable immunity. *Clark v. Southview*, 68 Ohio St.3d at 441, 628 N.E.2d 46; *Taylor v. Protestant Hosp. Assn.* (1911), 85 Ohio St. 90, 96 N.E. 1089. Ohio later abolished the doctrine of charitable immunity and imposed liability upon a hospital for the torts of its employees committed within the scope of employment under the theory of respondeat superior. *Avellone v. St. John's Hosp.* (1956), 165 Ohio St. 467, 60 O.O. 121, 135 N.E.2d 410; *Klema v. St. Elizabeth's Hosp. of Youngstown* (1960), 170 Ohio St. 519, 11 O.O.2d 326, 166 N.E.2d 765. The new liability did not include liability for "persons working in a hospital, such as doctors and nurses, under circumstances where the hospital has no authority or right of control over them." *Avellone*, 165 Ohio St. at 477, 60 O.O. 121, 135 N.E.2d 410.

{¶ 13} As hospitals grew in size and importance, courts looked to agency theories to expand liability to hospitals for the negligence of their independent contractors. In *Albain v. Flower Hosp.*, Ohio adopted a theory of vicarious liability based on the Restatement of the Law 2d, Agency (1958), Section 267. The court held that a hospital may be liable under the doctrine of agency by estoppel for the negligence of a physician to whom it has granted staff privileges. "In order to establish such liability, a plaintiff must show that: (1) the hospital made representations leading the plaintiff to believe that the negligent physician was operating as an agent under the hospital's authority, and (2) the plaintiff was thereby induced to rely upon the ostensible agency relationship." *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 553 N.E.2d 1038, at paragraph four of the syllabus.

{¶ 14} This approach comported with Ohio precedent in which agency by estoppel had been used in the commercial context. *Johnson v. Wagner Provision Co.* (1943), 141 Ohio St. 584, 26 O.O. 161, 49 N.E.2d 925. This court has previously held that for agency by estoppel to apply, there must be some reliance by a third person upon the appearance of an agency relationship with harm

resulting from the induced reliance. *Councell v. Douglas* (1955), 163 Ohio St. 292, 56 O.O. 262, 126 N.E.2d 597.

{¶ 15} In adopting the test of the Restatement of Agency, *Albain* rejected the theory of vicarious liability based upon 2 Restatement of the Law 2d, Torts (1965), Section 429, which required the employer to "hold out" the independent contractor as his own employee and required proof that the third person reasonably believed that the services were being performed by the principal or its agent. *Albain*, 50 Ohio St.3d at 262, 553 N.E.2d 1038. *Albain* distinguished agency by estoppel from a hospital's direct liability for its own actions, including the negligent granting and continuing of staff privileges to staff physicians and respondeat superior liability for the torts of actual agents.

{¶ 16} Four years later, in *Clark v. Southview*, 68 Ohio St.3d at 440, 628 N.E.2d 46, a divided court criticized the *Albain* test as too narrow, making it "virtually impossible" for a plaintiff to establish reliance. *Southview* overruled *Albain*'s definition in favor of a new, less stringent test and justified the new test by the demands of public policy in response to the growth of the modern-day full-service hospital, its use of media for advertising, and public expectations about medical care. *Southview* relaxed the reliance requirement by intermingling the law of agency with tort law found in 2 Restatement of the Law 2d, Torts (1965), Section 429, that had been expressly rejected in *Albain*. The new test in *Southview* merely required that the hospital "holds itself out to the public as a provider of medical services" and that the patient looks to the hospital, not a particular doctor, for medical care. *Southview*, 68 Ohio St.3d at 444–445, 628 N.E.2d 46. The dissenting justices sharply criticized this expanded standard. It is the *Southview* test that the appellate court interpreted as creating independent liability for hospitals.

## II. APPELLATE COURT'S EXPANSION OF *SOUTHVIEW*

{¶ 17} The appellate court interpreted the *Southview* test as authority for imposing independent liability upon a hospital for the negligence of independent-contractor physicians. This conclusion, however, transforms the doctrine of vicarious liability, for it radically departs from basic agency principles. "It is a fundamental maxim of law that a person cannot be held liable, other than derivatively, for another's negligence." *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 254–255, 553 N.E.2d 1038.

### A. Departure from basic agency principles

{¶ 18} In general, a principal may be liable for the torts of an agent only when an actual agency relationship exists. "Generally, an employer or principal is

vicariously liable for the torts of its employees or agents under the doctrine of *respondeat superior*, but not for the negligence of an independent contractor over whom it retained no right to control the mode and manner of doing the contracted-for work." *Clark v. Southview*, 68 Ohio St.3d at 438, 628 N.E.2d 46.

{¶ 19} In the absence of actual agency, courts have used a fictional agency relationship to impose vicarious liability. *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 26 O.O. 161, 49 N.E.2d 925, paragraph four of the syllabus (agency by estoppel rests upon the theory that one has been led to rely upon the appearance of agency to his detriment. It is not applicable where there is no showing of induced reliance upon an ostensible agency); *Rubbo v. Hughes Provision Co.* (1941), 138 Ohio St. 178, 20 O.O. 233, 34 N.E.2d 202 (where the proprietor of a market advertises an article for sale, and a purchaser, in reliance on the advertisement, buys the article from the proprietor's lessee in the belief that he was buying from that proprietor, the doctrine of agency by estoppel applies. In an action for injuries resulting from the sale, the proprietor cannot deny that his lessee was his agent). This fictional agency relationship is applied in the hospital context. *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97.

{¶ 20} An agent who committed the tort is primarily liable for its actions, while the principal is merely secondarily liable. *Losito v. Kruse* (1940), 136 Ohio St. 183, 16 O.O. 185, 24 N.E.2d 705; *Herron v. Youngstown* (1940), 136 Ohio St. 190, 16 O.O. 188, 24 N.E.2d 708. The liability for the tortious conduct flows through the agent by virtue of the agency relationship to the principal. If there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions. *Losito*; *Herron*.

{¶ 21} An example is *Radcliffe v. Mercy Hosp. Anderson* (May 14, 1997), Hamilton App. Nos. C–960424 and 960425, 1997 WL 249436, a wrongful-death case filed against Mercy Hospital and two physicians, both independent contractors who had treated the plaintiff at Mercy. The plaintiff settled her claim against the first physician, and the court granted summary judgment in favor of the second physician. The court, in turn, granted summary judgment to the hospital on the issue of its liability for the alleged negligence of the independent-contractor physicians. The court concluded that once the primary liability was extinguished, either by settlement and release or by a favorable judgment, the secondary liability was necessarily extinguished also. Id., citing *Losito v. Kruse*. "[T]here can be no vicarious liability imputed to a principal, if there is no liability on the part of the agent." Id.

{¶ 22} In *Wells v. Spirit Fabricating, Ltd.* (1996), 113 Ohio App.3d 282, 680 N.E.2d 1046, the appellate court concluded that the plaintiff's settlement with and release of the employee/defendant also released the employer. An "employer

cannot be found to be liable for negligence he did not commit. The employer's liability is dependent on the negligence of the employee. Since the plaintiff released [the employee] for his negligence, there is no basis to support plaintiff's claim against Spirit [the employer]." Id. at 294, 680 N.E.2d 1046.

{¶ 23} Likewise, in *Dickerson v. Yetsko* (Nov. 22, 2000), Cuyahoga App. No. 77636, 2000 WL 1739298, the plaintiff settled with and executed a release to Dr. Yetsko. The court held that the release extinguished the secondary liability of Meridia Hospital because the hospital's liability, if any, was secondary to and derived solely from the primary liability of its agent. If the liability of the primarily liable party was extinguished, the liability of the secondarily liable party was likewise extinguished. Id.

{¶ 24} In situations involving vicarious liability, there arises the right of indemnity in the party that is secondarily liable. *Krasny–Kaplan Corp. v. Flo-Tork, Inc.* (1993), 66 Ohio St.3d 75, 609 N.E.2d 152; *Whitney v. Horrigan* (1996), 112 Ohio App.3d 511, 515, 679 N.E.2d 315; *Wells v. Spirit Fabricating,* 113 Ohio App.3d 282, 680 N.E.2d 1046. "[W]here a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable." *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 14, 70 O.O.2d 6, 321 N.E.2d 787. It logically follows that release of the employee from liability would thwart the employer's ability to seek reimbursement from the employee for payments made to the plaintiff by destroying the employer's subrogation rights. *Wells,* 113 Ohio App.3d at 293, 680 N.E.2d 1046.

{¶ 25} Consequently, a direct claim against a hospital premised solely upon the negligence of an agent who cannot be found liable is contrary to basic agency law.

B. An inequitable distribution of liability

{¶ 26} If we affirmed the appellate court's expansion of hospital liability, hospitals would in effect become primary insurers for any negligence occurring in the hospital, whether by an agent or nonagent. Instead of the secondarily liable party being in effect an excess insurer for the primary liability of the negligent party, the hospital becomes primarily responsible under what is, in effect, strict liability or liability without fault.

{¶ 27} Consequently, the court of appeals' expansion of hospital liability from indirect to direct is contrary to law. Agency by estoppel is not a direct claim against a hospital, but an indirect claim for the vicarious liability of an independent contractor with whom the hospital contracted for professional services. Furthermore, if the independent contractor is not and cannot be liable because of

the expiration of the statute of limitations, no potential liability exists to flow through to the secondary party, i.e., the hospital, under an agency theory.

{¶ 28} Therefore, we hold that agency by estoppel is a derivative claim of vicarious liability whereby the liability of the hospital must flow through the independent-contractor physician. Consequently, there can be no viable claim for agency by estoppel if the statute of limitations against the independent-contractor physician has expired.

{¶ 29} Here, the plaintiff alleged that she "underwent a chest x-ray at Defendant Knox Community [on two occasions.] The report[s] interpreting said x-ray[s] did not mention the presence of an enlarged mass * * *." She further alleged that Knox failed to provide competent radiology services to her, resulting in injuries. Drs. Wall and Schlesinger, the independent-contractor physicians who read and interpreted the x-rays, were not named defendants in this case. The statute of limitations as to them has expired, thereby extinguishing their liability, if any. In the absence of the tortfeasor's primary liability, there is no liability that may flow through to the hospital on an agency theory. Consequently, there is no genuine issue of material fact, and Knox is entitled to judgment as a matter of law.

{¶ 30} Therefore, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Judgment reversed
and cause remanded.

MOYER, C.J., O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

RESNICK and PFEIFER, JJ., dissent.

---

PFEIFER, J., dissenting.

{¶ 31} This court held in Clark v. Southview Hosp. & Family Health Ctr. (1994), 68 Ohio St.3d 435, 444–445, 628 N.E.2d 46, that "[a] hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital if it holds itself out to the public as a provider of medical services and in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care."

{¶ 32} The success or failure of such a cause of action is dependent on the negligence of the medical provider at issue, but is not dependent on whether the provider is a part of the lawsuit. Indeed, in Clark, the negligent doctor and his practice group were not parties to that case at the time of that trial. Clark, 68 Ohio St.3d at 436, 628 N.E.2d 46. They had originally been named as defendants,

but had settled their claims and had been dismissed from the case prior to trial. Thus, the majority's citing of three appellate decisions, two of which are unreported, that stand for the proposition that a release of a primarily liable party also releases a secondarily liable party is less than convincing in this context.

{¶ 33} Even if those cases were persuasive, they address an issue not at play in this case. Clark did not settle her claims with Drs. Wall and Schlesinger; she neither sued them nor executed releases absolving them from liability. A plaintiff need not sue both the primarily and secondarily liable party in a case based on respondeat superior in order to recover:

{¶ 34} "For the wrong of a servant acting within the scope of his authority, the plaintiff has a right of action against either the master or the servant, or against both, in separate actions, as a judgment against one is no bar to an action or judgment against the other until one judgment is satisfied." *Losito v. Kruse* (1940), 136 Ohio St. 183, 16 O.O. 185, 24 N.E.2d 705.

{¶ 35} The idea that it is a plaintiff's duty to include all potential parties in order to preserve the rights of a particular defendant is at odds with the Civil Rules. Civ.R. 14(A) allows a defendant himself to bring in other defendants:

{¶ 36} "At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

{¶ 37} Further, Clark's failure to sue the allegedly negligent doctors before the expiration of the statute of limitations did not destroy the hospital's right of indemnity against them. An indemnity action by a secondarily liable party may be filed after the resolution of the plaintiff's case:

{¶ 38} "Where judgment in a tort action is had against a party only secondarily or vicariously liable for the violation of a common duty owed by two persons, upon the payment of such judgment and necessary expenses by such party, there arises an implied contract of indemnity in favor of the party secondarily liable against the person (or persons) primarily liable." *Maryland Cas. Co. v. Frederick Co.* (1944), 142 Ohio St. 605, 27 O.O. 529, 53 N.E.2d 795, paragraph two of the syllabus.

{¶ 39} Thus, Patricia Clark did not need to sue Drs. Wall and Schlesinger in order to recover against the hospital. *Clark* sets forth the elements necessary for recovery under an agency-by-estoppel claim against a hospital: (1) negligence by a medical provider practicing in the hospital, (2) a hospital that holds itself out to the public as a provider of medical services, and (3) a patient who looks to the hospital, rather than to the practitioner, to provide competent medical care.

{¶ 40} In modern medicine, a patient is a mouse in a maze. Upon reporting to the hospital, the patient is dropped into the labyrinth. There is one circuitous path to treatment—the path set out by the hospital. Along the path, a variety of things happen to the patient at the hands of well-meaning folks who are trying to make him well, but they have all different kinds of connections to the hospital.

{¶ 41} Here, Patricia Clark went to the hospital on two separate occasions for x-rays. On both occasions, the hospital allegedly chose who would take her x-ray and who would read her x-ray.

{¶ 42} The *Clark* case concerned a trip to the emergency room, another instance in which a patient was relying on the institution, rather than any particular individual, to provide care. As the court wrote:

{¶ 43} "As an industry, hospitals spend enormous amounts of money advertising in an effort to compete with each other for the health care dollar, thereby inducing the public to rely on them in their time of medical need. The public, in looking to the hospital to provide such care, is unaware of and unconcerned with the technical complexities and nuances surrounding the contractual and employment arrangements between the hospital and the various medical personnel operating therein. Indeed, often the very nature of a medical emergency precludes choice. Public policy dictates that the public has every right to assume and expect that the hospital is the medical provider it purports to be." 68 Ohio St.3d at 444, 628 N.E.2d 46.

{¶ 44} *Clark* does not, and should not, make hospitals liable for the negligence of every independent contractor. For instance, for nonemergency procedures, where a patient has chosen her own doctor to provide medical services within the hospital, *Clark* should not apply. However, when the hospital holds itself out as a provider of services as an institution, the patient acts on that representation, and the hospital directs the patient's care, then the hospital is subject to liability.

{¶ 45} Patricia Clark should have been given the opportunity to prove her case at trial.

RESNICK, J., concurs in the foregoing dissenting opinion.

---

Rourke & Blumenthal, L.L.P., and Michael J. Rourke, for appellee.

Bricker & Eckler, L.L.P., and Bobbie S. Sprader, for appellant.

Bricker & Eckler, L.L.P., Catherine M. Ballard, and Natalie C. Trishman, urging reversal for amicus curiae Ohio Hospital Association.

Tucker & Ellis, L.L.P., and Irene C. Keyse–Walker, urging reversal for amici curiae Ohio Association of Civil Trial Attorneys, Center for Health Affairs, and University Hospitals of Cleveland.