[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Clawson v. Hts. Chiropractic Physicians, L.L.C.*, Slip Opinion No. 2022-Ohio-4154.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4154

CLAWSON, APPELLEE, *v.* HEIGHTS CHIROPRACTIC PHYSICIANS, L.L.C., APPELLANT, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Clawson v. Hts. Chiropractic Physicians, L.L.C.*, Slip Opinion No. 2022-Ohio-4154.]**

*Civil law—Malpractice—Respondeat superior—Because plaintiff had failed to timely serve chiropractor with her refiled malpractice complaint and because the statute of limitations on her claim against the chiropractor had expired, plaintiff's right of action against the chiropractor was extinguished by operation of law—Chiropractor's employer could not be held vicariously liable for chiropractor's alleged malpractice—Court of appeals' judgment reversed and trial court's entry of summary judgment in favor of employer reinstated.*

(No. 2020-1574—Submitted January 26, 2022—Decided November 23, 2022.)

APPEAL from the Court of Appeals for Montgomery County,

No. 28632, 2020-Ohio-5351.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we consider whether a plaintiff may prevail on a claim of chiropractic malpractice against a chiropractor's employer under the doctrine of respondeat superior when the expiration of the applicable statute of limitations has extinguished the chiropractor's direct liability for the alleged malpractice. Based on our holding in *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, and basic principles of agency law, we answer that question in the negative and reverse the court of appeals' judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} In 2016, appellee, Cynthia Clawson, sued chiropractor Don Bisesi, D.C., and his employer, appellant, Heights Chiropractic Physicians, L.L.C., for medical malpractice in the Montgomery County Court of Common Pleas. Clawson dismissed her initial claims in September 2017,[1] but she refiled her claims against Dr. Bisesi and Heights Chiropractic in August 2018, within the time allowed by Ohio's saving statute, R.C. 2305.19(A).

{¶ 3} Clawson's claims arose from treatment that she received at Heights Chiropractic on November 7, 2014. On that date, Clawson, a regular patient at Heights Chiropractic, received treatment from Dr. Bisesi, who was not her usual chiropractor. Clawson alleges that while she was lying face down on a table, Dr. Bisesi acted negligently when he applied excessive pressure to her back, causing her left breast implant to rupture. Clawson claims that as Dr. Bisesi's employer, Heights Chiropractic is liable for his negligence. She seeks damages in excess of $25,000.

{¶ 4} Both Dr. Bisesi and Heights Chiropractic filed answers to Clawson's refiled complaint, and both admit that Dr. Bisesi was an employee of Heights

_____

1. Clawson's original complaint also included claims against another chiropractor who worked for Heights Chiropractic.

Chiropractic at all relevant times. In his answer, Dr. Bisesi asserted the affirmative defense of failure of service of process.

**{¶ 5}** Clawson first attempted to serve Dr. Bisesi with her refiled complaint by FedEx at an address in West Melbourne, Florida, but that attempt was unsuccessful. The trial court then granted Clawson an extension of time in which to find a current address for Dr. Bisesi and to perfect service on him. But despite the failure of her initial attempt to serve Dr. Bisesi and her purported attempt to obtain a valid address for him, Clawson directed a second attempt at service to the same Florida address. This time, a person identified as "B. Kanapill" signed for the FedEx envelope. Clawson made no further effort to perfect service on Dr. Bisesi.

**{¶ 6}** In August 2019, Dr. Bisesi filed a motion to dismiss Clawson's refiled complaint or, alternatively, for summary judgment, based on Clawson's failure to perfect service on him within one year of the refiling of her complaint. In an affidavit filed in support of his motion, Dr. Bisesi averred that he had not resided at the Florida address to which Clawson directed service of the complaint since June 2018, which was two months before Clawson refiled her complaint. He further stated that he did not know the person who signed the FedEx signature card and that the signer did not contact him or forward the summons and complaint to him. Dr. Bisesi argued in the motion that because of the failure of service, Clawson had not commenced her refiled action against him under Civ.R. 3(A)[2] and that she therefore had not complied with R.C. 2305.19(A)'s requirement that she "commence [the] new action within one year" of the prior voluntary dismissal. Dr. Bisesi also argued that the one-year statute of limitations applicable to the claims had expired, thus precluding Clawson from filing a valid new complaint against him.

---

2. Civ.R. 3(A) states: "A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant * * *."

**{¶ 7}** The trial court granted Dr. Bisesi's motion to dismiss, finding that Clawson did not validly serve Dr. Bisesi with her refiled complaint. Thus, the only claim that was left was Clawson's claim against Heights Chiropractic, which was based solely on its status as Dr. Bisesi's employer.

**{¶ 8}** Following the trial court's dismissal of Clawson's claims against Dr. Bisesi, Heights Chiropractic moved for summary judgment, arguing that Clawson could not maintain her vicarious-liability claim against it because, as a matter of law, she was precluded from maintaining a malpractice claim directly against Dr. Bisesi. The trial court granted Heights Chiropractic's motion, determining that Heights Chiropractic's vicarious liability was contingent on Dr. Bisesi's direct liability and that "because the primary claims against Dr. Bisesi were extinguished, so too [was] the secondary claim against" Heights Chiropractic.

**{¶ 9}** Clawson appealed the trial court's judgment to the Second District Court of Appeals, challenging both the trial court's dismissal of her claim against Dr. Bisesi and its entry of summary judgment in favor of Heights Chiropractic. 2020-Ohio-5351, ¶ 1. The Second District affirmed the trial court's dismissal of Clawson's claim against Dr. Bisesi, but it reversed the trial court's summary judgment in favor of Heights Chiropractic. *Id*. at ¶ 24. The court of appeals held that Clawson could pursue her claim against Heights Chiropractic for the negligence of Dr. Bisesi even though the trial court had properly dismissed her direct claim against him. *Id.* at ¶ 23.

**{¶ 10}** This court accepted Heights Chiropractic's discretionary appeal. *See* 161 Ohio St.3d 1474, 2021-Ohio-717, 164 N.E.3d 477. Heights Chiropractic asks us to hold that a plaintiff may not pursue a vicarious-liability claim under the doctrine of respondeat superior for medical malpractice against a physician's employer after the physician's direct liability has been extinguished. Essentially, it urges us to extend to the facts of this case our holding in *Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939.

4

## II. LEGAL ANALYSIS

### A. An employer may be vicariously liable for a tort committed by its employee or independent contractor

**{¶ 11}** " 'It is a fundamental maxim of law that a person cannot be held liable, other than derivatively, for another's negligence.' " *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 17, quoting *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 254-255, 553 N.E.2d 1038 (1990), *overruled on other grounds by Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 444-445, 628 N.E.2d 46 (1994). In the employment-law context, "the most common form of derivative or vicarious liability is that imposed by the law of agency, through the doctrine of respondeat superior." *Albain* at 255.

**{¶ 12}** We have long recognized that an employer is vicariously liable for the negligence of its employees under the doctrine of respondeat superior. *See Clark* at 438, citing *Councell v. Douglas*, 163 Ohio St. 292, 295-296, 126 N.E.2d 597 (1955). More than 80 years ago, this court explained that an employer may be liable for a wrong committed by its employee when the employer delegates a course of action to the employee and the employee then commits a tortious act while acting within the scope of his employment as to the delegated course of action. *See Losito v. Kruse*, 136 Ohio St. 183, 186, 24 N.E.2d 705 (1940). The employer and the employee are not jointly liable under that circumstance; the "primary liability" rests with the employee who committed the wrong, and the "secondary liability" rests with the employer by reason of its relationship with the employee-wrongdoer. *Id*. at 187.

**{¶ 13}** In *Losito*, this court stated, "[T]he plaintiff has a right of action against either the master or the servant, or against both, in separate actions, as a judgment against one is no bar to an action or judgment against the other until one judgment is satisfied." *Id.*, citing *Maple v. Cincinnati, Hamilton & Dayton RR. Co.*, 40 Ohio St. 313 (1883). An employer who responds in damages for its

employee's wrongful acts, however, has a right of subrogation against the employee. *Id.* at 188. In recognizing that right, we stated, "[S]ettlement with and release of the servant will exonerate the master." *Id.* "Otherwise, the master would be deprived of his right of reimbursement from the servant, if the claim after settlement with the servant could be enforced against the master." *Id.*

{¶ 14} The doctrine of respondeat superior does not extend an employer's vicarious liability to a tort committed by an independent contractor, because an employer generally lacks the right to control the mode and manner of an independent contractor's performance. *Clark*, 68 Ohio St.3d at 438, 628 N.E.2d 46, citing *Councell* at 295-296. Nevertheless, under the theory of agency by estoppel, courts have used the concept of a fictional agency relationship to impose vicarious liability on principals for the acts of their independent contractors. *See Comer*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 18-19, citing *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 49 N.E. 2d 925 (1943), paragraph four of the syllabus. For example, a hospital may be vicariously liable under the agency-by-estoppel theory for the negligence of an independent-contractor medical practitioner to whom it has granted staff privileges, if the hospital "holds itself out to the public as a provider of medical services and in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care." *Clark* at 444-445.

{¶ 15} In *Comer*, this court considered the question whether a plaintiff had a viable claim against a hospital under the theory of agency by estoppel for the negligence of its independent-contractor physician when the statute of limitations for any claim against the physician had expired. *Id.* at ¶ 1. Before answering that question in the negative, we rejected as contrary to law and as a "radical[] depart[ure] from basic agency principles" the lower court's determination that a claim of agency by estoppel is a direct claim against the hospital, as opposed to a

derivative or vicarious-liability claim. *Id.* at ¶ 17-18. Turning to the viability of the plaintiff's vicarious-liability claim in that case, we stated that a "claim against a hospital premised solely upon the negligence of an agent who cannot be found liable is contrary to basic agency law." *Id.* at ¶ 25. Accordingly, we held that "there can be no viable claim for agency by estoppel if the statute of limitations against the independent-contractor physician has expired." *Id.* at ¶ 2.

{¶ 16} Although *Comer* involved an agency-by-estoppel claim, we did not distinguish between vicarious liability based on the doctrine of respondeat superior and vicarious liability based on the theory of agency by estoppel. *But see State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas*, 126 Ohio St.3d 198, 2010-Ohio-3299, 931 N.E.2d 1082, ¶ 29 (distinguishing *Comer*, in part, as having been decided on the agency-by-estoppel theory). Indeed, we cited *Losito*, 136 Ohio St. 183, 24 N.E.2d 705, which involved a respondeat-superior claim, *id.* at 186, for the principles that vicarious liability "flows through the agent by virtue of the agency relationship to the principal" and that "[i]f there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions," *Comer* at ¶ 20. *See also Herron v. Youngstown*, 136 Ohio St. 190, 199-200, 24 N.E.2d 708 (1940).

### B. *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*

{¶ 17} In support of its argument that it cannot be held vicariously liable for Dr. Bisesi's alleged negligence because the expiration of the statute of limitations precludes a direct claim of malpractice against Dr. Bisesi, Heights Chiropractic relies on *Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, in which this court addressed a question of Ohio law certified to it by the United States Court of Appeals for the Sixth Circuit, *id.* at ¶ 1. In that case, National Union Fire Insurance Company of Pittsburgh, PA, had sued in federal court its former attorney, Richard Wuerth, and Wuerth's law firm for legal malpractice, alleging that both Wuerth and the firm were directly liable for malpractice and that the firm was also

vicariously liable for Wuerth's malpractice. *Id.* at ¶ 5, 7. The federal district court dismissed the claim against Wuerth as untimely and, because National Union had no cognizable claims against Wuerth, the court further dismissed the claims involving vicarious liability against the firm. *Id.* at ¶ 8. The court granted summary judgment in favor of the firm, determining that it could not be held directly liable for malpractice. *Id.*

{¶ 18} National Union appealed, and the Sixth Circuit certified the following question of state law to this court: "Under Ohio law, can a legal malpractice claim be maintained directly against a law firm when all of the relevant principals and employees have either been dismissed from the lawsuit or were never sued in the first instance?" *Id.* at ¶ 1. This court extracted from the certified question two distinct issues: (1) whether a law firm can commit and "be *directly* liable for legal malpractice," and (2) whether a law firm "may be held *vicariously* liable for malpractice when none of its principals or employees are liable for malpractice or have been named as defendants." (Emphasis sic.) *Id.* at ¶ 12. We answered both of those questions in the negative. *Id.* at syllabus.

{¶ 19} With respect to the first issue in *Wuerth*—whether a law firm may be directly liable for legal malpractice—we looked to our medical-malpractice precedent and, specifically, to our prior determination that "because only individuals [can] practice medicine, only individuals can commit medical malpractice." *Id.* at ¶ 14, citing *Browning v. Burt*, 66 Ohio St.3d 544, 556, 613 N.E.2d 993 (1993) ("A hospital does not practice medicine and is incapable of committing malpractice"). Analogizing based on that precedent, we held that "a law firm does not engage in the practice of law and therefore cannot directly commit legal malpractice." *Id.* at ¶ 18.

{¶ 20} We then turned to the second issue—"whether a law firm may be *vicariously* liable for legal malpractice when no individual attorneys are liable or have been named." (Emphasis added.) *Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-

3601, 913 N.E.2d 939, at ¶ 19. In answering that question, we cited the same general principles of agency law discussed above: (1) a person can be held liable for another's negligence only derivatively, *id.* at ¶ 20, citing *Albain*, 50 Ohio St.3d at 255, 553 N.E.2d 1038; (2) generally, an employer is vicariously liable for its employees' torts under the doctrine of respondeat superior, *id.*, citing *Clark*, 68 Ohio St.3d at 438, 628 N.E.2d 46; and (3) "Although a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously liable only when an agent could be held directly liable," *id.* at ¶ 22.

{¶ 21} As an illustration of the third principle, we cited our statement in *Losito* that a settlement with and release of an employee from liability exonerates the employer. *Wuerth* at ¶ 22, citing *Losito*, 136 Ohio St. at 188, 24 N.E.2d 705. We also cited our statement in *Comer* that " '*[i]f there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions.*' " (Emphasis added in *Comer*.) *Wuerth* at ¶ 22, quoting *Comer*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 20. That rule, we emphasized, is not limited to claims based on the doctrine of respondeat superior but also applies to other types of vicarious liability. *Id.* at ¶ 23. Finding "no basis for differentiating between a law firm and any other principal to whom Ohio law would apply," *id.* at ¶ 24, we held that "a law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice," *id.* at ¶ 26.

### C. Heights Chiropractic misreads *Wuerth*

{¶ 22} Before addressing whether *Wuerth* applies to medical-malpractice claims, we pause to consider Heights Chiropractic's characterization of *Wuerth* as this court's having created an "exception to the general rule" of respondeat-superior liability in malpractice cases by holding that vicarious liability for malpractice does not survive the extinguishment of a direct claim against an employee who was

licensed to provide the allegedly negligent treatment or service. That argument conflates this court's analysis of the two distinct issues presented in *Wuerth*.

**{¶ 23}** In support of its proposition of law, Heights Chiropractic relies on our statement in *Wuerth* that "because only individuals practice medicine, only individuals can commit medical malpractice," 122 Ohio St.3d at 597, 2009-Ohio-3601, 913 N.E.2d 939, and *Wuerth*'s extension of that rationale to lawyers and law firms. This court's discussion in *Wuerth* of the practice of medicine or law as being restricted to licensed individuals, however, related exclusively to the issue whether a law firm could be *directly* liable for malpractice. *See id.* at ¶ 13-18. There is no suggestion that either Wuerth's status as an attorney or his law firm's inability to directly commit malpractice informed this court's analysis of the vicarious-liability issue. *See id.* at ¶ 19-26. To the contrary, with respect to vicarious liability, we found "no basis for differentiating between a law firm and any other principal to whom Ohio law would apply." *Id.* at ¶ 24. Accordingly, we reject Heights Chiropractic's erroneous premise that *Wuerth* created a professional-practice exception to the doctrine of respondeat superior. Because Clawson's only claim against Heights Chiropractic is based on the doctrine of respondeat superior, the fact that Heights Chiropractic cannot directly commit malpractice is irrelevant.

**{¶ 24}** We now turn to the question whether the analysis that we conducted regarding the vicarious-liability question in *Wuerth* applies here and bars Clawson's respondeat-superior claim against Heights Chiropractic.

**D. Ohio's appellate courts have offered conflicting interpretations of *Wuerth***

**{¶ 25}** In the years since this court decided *Wuerth*, Ohio's appellate courts have offered differing interpretations of that decision's scope and meaning. Some courts have purported to limit *Wuerth* to its facts, noting that the attorney in *Wuerth* was a partner in and part owner of his law firm rather than a traditional employee. *See, e.g.*, *Dinges v. St. Luke's Hosp.*, 2012-Ohio-2422, 971 N.E.2d 1045, ¶ 38 (6th Dist.) (reversing summary judgment in favor of a medical corporation based on the

10

issue whether the individual doctors were traditional employees or partners/part owners), citing *Tisdale v. Toledo Hosp.*, 197 Ohio App.3d 216, 2012-Ohio-1110, 967 N.E.2d 280, ¶ 29 (6th Dist.) (stating that Wuerth's employment relationship with his firm fell into a third category that is "distinguishable from both respondeat superior and agency by estoppel"); *Taylor v. Belmont Community Hosp.*, 7th Dist. Belmont No. 09 BE 30, 2010-Ohio-3986, ¶ 34 ("Rather, each partner in a law firm is a part owner.  Thus, this portion of *Wuerth* is wholly distinguishable from the traditional employer-employee relationship existing in the case before us").

{¶ 26} Contrary to those decisions, *Wuerth* made no distinction with respect to a law firm's exposure to vicarious liability as to an attorney who is an employee of the firm and an attorney who is a partner in the firm.  The certified question in *Wuerth* itself referred to a situation in which "all of the relevant *principals and employees*" of the law firm had been dismissed from the lawsuit or were not sued. (Emphasis added.)  122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, at ¶ 1. Accordingly, we broadly framed the second issue in *Wuerth* as whether a law firm could be vicariously liable for malpractice "when no *individual attorney*s are liable or have been named."  (Emphasis added.)  *Id.* at ¶ 19.  And our equally broad holding—that "a law firm is not vicariously liable for legal malpractice unless one of its *principals or associates* is liable for legal malpractice" (emphasis added), *id.* at ¶ 2—made no distinction based on the involvement of an associate/employee or a partner/part owner.  In fact, the only mention of Wuerth's status as a partner in the law firm appeared in the recitation of the case's facts.  *See id.* at ¶ 5.  We therefore reject any suggestion that *Wuerth* is limited to claims arising out of the negligence of a partner/part owner, as opposed to a traditional employee.

{¶ 27} In support of their conclusions purporting to limit *Wuerth*'s application, the Seventh District Court of Appeals in *Taylor* at ¶ 35 and the Sixth District Court of Appeals in *Tisdale* at ¶ 28 pointed to Chief Justice Moyer's concurring opinion in *Wuerth*, which was joined by four justices, *id.* at ¶ 39 (Moyer,

C.J., concurring). That concurrence did "stress the narrowness" of the *Wuerth* holding, *id.* at ¶ 35 (Moyer, C.J., concurring), but not in the way that the appellate courts suggested. Chief Justice Moyer stated, "[W]e answer only the very narrow certified question before us." *Id.* at ¶ 27 (Moyer, C.J., concurring). Again, that question was whether "a legal malpractice claim [can] be maintained *directly* against a law firm when all of the relevant principals and employees have either been dismissed from the lawsuit or were never sued." (Emphasis added.) *Id.* at ¶ 1. Chief Justice Moyer agreed with the majority opinion that the answer to that question was no: "a law firm's liability for malpractice is vicarious," not direct. *Id.* at ¶ 27 (Moyer, C.J., concurring). And the next seven paragraphs of the concurring opinion distinguished cases that National Union had cited for its proposition that a law firm may be *directly* liable for malpractice. *See id.* at ¶ 28-34 (Moyer, C.J., concurring).

{¶ 28} Chief Justice Moyer's concurring opinion went on to stress that the decision in *Wuerth* "should not be understood to inhibit law-firm liability for acts like those [that were] alleged" by National Union. *Id.* at ¶ 35 (Moyer, C.J., concurring). And he noted that a law firm may be *directly* liable in causes of action *other than for malpractice* and may be held *vicariously* liable for malpractice "*as discussed in the majority opinion*." (Emphasis added.) *Id.* (Moyer, C.J., concurring). It should not be overlooked that Chief Justice Moyer also joined the majority opinion in *Wuerth*. *Id.* at ¶ 27, 36 (Moyer, C.J., concurring). If we may glean anything relevant to this case from his concurring opinion, it is that Chief Justice Moyer—and the four justices who joined his concurring opinion—*agreed* with the majority opinion's determination regarding a law firm's vicarious liability, which included its conclusion that a law firm has no vicarious liability unless at least one principal or employee of the firm is liable. *Id.* at ¶ 24.

12

### E. *Wuerth* applies to medical- and legal-malpractice claims alike

{¶ 29} Other of Ohio's appellate courts, and most notably the First District Court of Appeals, have applied the reasoning in *Wuerth* to hold that a cause of action for vicarious liability against a medical employer is precluded when a malpractice claim against an employee-doctor is time-barred. *See, e.g.*, *McQuade v. Mayfield Clinic, Inc.*, 2022-Ohio-785, 186 N.E.3d 278, ¶ 20 (1st Dist.) ("The statute of repose extinguished [the doctor's] malpractice liability and, as a result, extinguished the vicarious liability claim against [his employer]"); *Rush v. Univ. of Cincinnati Physicians*, *Inc.*, 2016-Ohio-947, 62 N.E.3d 583, ¶ 25 (1st Dist.) ("*Wuerth* * * * leaves no room for vicarious liability for medical malpractice where a doctor cannot be found to be liable for malpractice"); *Henry v. Mandell-Brown*, 1st Dist. Hamilton No. C-090752, 2010-Ohio-3832, ¶ 14 (holding that a respondeat-superior claim against a surgery center could not survive when the claims against the doctor had been dismissed as time-barred). The Eighth and Tenth District Courts of Appeals have reached the same conclusion. *See Hignite v. Glick, Layman & Assocs., Inc.*, 8th Dist. Cuyahoga No. 95782, 2011-Ohio-1698, ¶ 13 (affirming judgment in favor of dental practice when statute of limitations prevented the plaintiff from establishing the liability of any individual dentist); *Moore v. Mt. Carmel Health Sys.*, 2020-Ohio-6695, 164 N.E.3d 1041, ¶ 51 (10th Dist.) (respondeat-superior action against medical practice was barred because the plaintiff had failed to serve the employee-doctor within the statute of limitations"), *appeal accepted*, 163 Ohio St.3d 1439, 2021-Ohio-1896, 168 N.E.3d 1195. In light of this court's reliance in *Wuerth* on basic principles of agency law and the widely acknowledged similarities between legal malpractice and medical malpractice, we agree with those courts that *Wuerth* precludes a vicarious-liability claim for medical malpractice against a physician's employer when a direct claim against the physician is time-barred.

### F. *State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas* does not contradict *Wuerth*

**{¶ 30}** Shortly after issuing our decision in *Wuerth*, this court decided *Sawicki*, 126 Ohio St.3d 198, 2010-Ohio-3299, 931 N.E.2d 1082, which concerned a patient's right to pursue a malpractice claim against a medical corporation based on the conduct of a physician who had been employed by both the medical corporation and the state-medical-college hospital. *Id.* at ¶ 2-3. In that case, the trial court dismissed the claim against the physician on the ground that he was a state employee, and it stayed the respondeat-superior claim against the medical corporation pursuant to R.C. 2743.02(F) pending a determination by the Ohio Court of Claims as to whether the physician acted within the scope of his *state* employment at the time of the alleged malpractice and was thus entitled to personal immunity. *Id.* at ¶ 5.

**{¶ 31}** The matter reached this court through an appeal of the Sixth District's issuance of a writ of procedendo to compel the trial judge to vacate the stay. *Id.* at ¶ 1. Relevant here, we rejected the medical corporation's argument that it could not be held vicariously liable if the physician-employee were personally immune from liability based on his co-employment with the state. *Id.* at ¶ 28. We concluded that the employee's potential immunity as a state employee was "immaterial" to his private employer's vicarious liability, *id.* at ¶ 21, because "[a]n employee's immunity from liability is no shield to the employer's liability for acts under the doctrine of respondeat superior," *id.* at ¶ 28, citing *Adams v. Peoples*, 18 Ohio St.3d 140, 142-143, 480 N.E.2d 428 (1985). And although we acknowledged our holding in *Comer*, saying that "a hospital cannot be held liable under a derivative claim of vicarious liability when the physician cannot be held primarily liable," *id.* at ¶ 29, citing *Comer*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 20, we distinguished *Comer* in part because "[t]he claim against the hospital [in *Comer*] was extinguished by the statute of limitations, not by

application of immunity," *id*. A determination of immunity, we stated, is not a determination of liability, *id.*, whereas a dismissal based on the statute of limitations is a dismissal on the merits, *see Moore v. Mt. Carmel Health Sys.*, 162 Ohio St.3d 106, 2020-Ohio-4113, 164 N.E.3d 376, ¶ 19, citing *LaBarbera v. Batsch*, 10 Ohio St.2d 106, 114-115, 227 N.E.2d 55 (1967).

### G. Heights Chiropractic may not be held vicariously liable for Dr. Bisesi's alleged malpractice

{¶ 32} In *Wuerth*, we applied basic principles of agency law and held, "A law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice." 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, at paragraph two of the syllabus. Not only did we emphasize the similarities between the legal and medical professions with respect to liability for malpractice, but we also stated, "There is no basis for differentiating between a law firm and any other principal to whom Ohio law would apply." *Id.* at ¶ 24. Today, we hold that the rule stated in *Wuerth* applies equally to claims of vicarious liability for medical malpractice.

{¶ 33} Because Clawson had failed to timely serve Dr. Bisesi with her refiled complaint, and because the statute of limitations on her claim against Dr. Bisesi had expired, Clawson's right of action against Dr. Bisesi was extinguished by operation of law. As a result, Heights Chiropractic, as Dr. Bisesi's employer, may not be held vicariously liable for Dr. Bisesi's alleged malpractice.

### III. CONCLUSION

{¶ 34} We reverse the Second District Court of Appeals' judgment and reinstate the trial court's entry of summary judgment in favor of Heights Chiropractic.

Judgment reversed.

KENNEDY, FISCHER, and DEWINE, JJ., concur.

BRUNNER, J., dissents, with an opinion joined by DONNELLY and STEWART, JJ.

_____

**BRUNNER, J., dissenting.**

### Introduction

**{¶ 35}** Longstanding Ohio vicarious-liability law permits a plaintiff who was injured by an employer's employee or principal's agent acting within the scope of his or her duties to seek damages against either the employer/principal, the employee/agent, or both. Though the plaintiff must prove negligence or wrongdoing by the employee/agent to succeed on a claim against the employer/principal, the plaintiff need not actually obtain a judgment against the employee/agent or even file suit against them in order to prevail against the employer/principal. I disagree with the majority opinion because it follows a line of precedent that conflates establishing negligence or wrongdoing on the part of the employee/agent (which is necessary to hold an employer/principal vicariously liable) with actually obtaining or being able to obtain a judgment against the employee/agent (which is not necessary to hold the employer/principal vicariously liable).

**{¶ 36}** In this case, the Second District Court of Appeals reversed the trial court's grant of summary judgment in favor of appellant, Heights Chiropractic Physicians, L.L.C., holding that appellee, Cynthia Clawson, was not required to file suit against the chiropractor, Don Bisesi, D.C., who allegedly injured her, to pursue an action against Dr. Bisesi's employer, Heights Chiropractic. *See* 2020-Ohio-5351, ¶ 20-24. Though this court has sometimes used language that has created confusing and incongruous judgments in cases of this type, we have never repudiated the basic principles of respondeat superior creating liability for an employer when its employee acts tortiously within the scope of his or her

16

employment. Accordingly, I would affirm the judgment of the Second District. Because the majority does not, I respectfully dissent.

## Analysis

{¶ 37} As early as 1940, this court has stated that the law of respondeat superior is:

> For the wrong of a servant acting within the scope of his authority, the plaintiff has a right of action against either the master or the servant, or against both, in separate actions, as a judgment against one is no bar to an action or judgment against the other until one judgment is satisfied. *Maple v. Cincinnati,* [*Hamilton & Dayton RR. Co.*, 40 Ohio St. 313 (1883)]. The plaintiff, in any event, can have but one satisfaction of his claim. But, under such circumstances, there exists the right of subrogation to the claim of the plaintiff and reimbursement upon the part of the master as against the servant, in case the former is obliged to respond in damages for the wrongful act of the latter. *Clark v. Fry*, [8 Ohio St. 358 (1858)]; *City of Zanesville v. Fannan*, [53 Ohio St. 605, 42 N.E. 703 (1895)]; *Morris v. Woodburn*, [57 Ohio St. 330, 48 N.E. 1097 (1897)]; *City of Chicago v. Robbins*, [67 U.S. 418, 17 L.Ed. 298 (1862)]; *City of Rochester v. Campbell*, [123 N.Y. 405, 25 N.E. 937 (1890)].

> A settlement with and release of the servant will exonerate the master. Otherwise, the master would be deprived of his right of reimbursement from the servant, if the claim after settlement with the servant could be enforced against the master. *Herron v. City of Youngstown*, [136 Ohio St. 190, 24 N.E.2d 708 (1940)]; *Bello v. City*

*of Cleveland*, [106 Ohio St. 94, 138 N.E. 526 (1922)]; *Brown v. Town of Louisburg*, [126 N.C. 701, 36 S.E. 166 (1900)].

*Losito v. Kruse*, 136 Ohio St. 183, 187-88, 24 N.E.2d 705 (1940).  Based on the right to indemnification on the part of the employer/principal as against its negligent employee/agent, courts have consistently concluded that once the primary liability is extinguished by either settlement and release or a judgment on the merits, the secondary liability is also necessarily extinguished.  *See, e.g.*, *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 20-24, citing with approval *Radcliffe v. Mercy Hosp. Anderson*, 1st Dist. Hamilton Nos. C-960424 and 960425, 1997 WL 249436 (May 14, 1997).  And when the plaintiff cannot prevail on the merits by showing negligence (or satisfy the standard for whatever wrongdoing has been alleged) by the employee/agent, no claim exists against the employer/principal.  *See Comer* at ¶ 20.  None of these basic principles of secondary liability, however, makes it necessary for the plaintiff to actually obtain a judgment against the negligent employee/agent or to even sue them.  *See Losito* at 187-188.  Under this precedent, proving the negligence or wrongdoing of an employee/agent in an action against the employer/principal is enough for liability to attach against the employer/principal, who may then pursue an indemnification claim against the employee/agent.

{¶ 38} But starting in 2005, this court's holdings on the issue began to drift from this simple and direct legal construct.  The responsibility of securing indemnification began to shift from the employer/principal to the aggrieved plaintiff, blurring the distinction between establishing the negligence of an employee/agent and actually obtaining a judgment against the employee/agent.  This court in *Comer* somewhat incautiously stated, "If there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions."  *Id.* at ¶ 20.  We cited *Losito* and *Herron* for that

18

proposition, even though both *Losito* and *Herron* clearly express that a plaintiff need not even sue the employee/agent primary tortfeasor, to say nothing of "assign[ing]" "liability" to that person, *Comer* at ¶ 20. *See also Losito* at 187-188; *Herron* at paragraph two of the syllabus.

{¶ 39} *Comer* detoured from what was the existing law of vicarious liability in Ohio. In *Comer*, this court held that when an independent-contractor physician was not (and could not be) made a party to a negligence lawsuit due to the expiration of the statute of limitations, the physician's hospital-principal could not be held liable for the physician's negligence. *Comer* at ¶ 1-2. Justice Pfeifer (joined by Justice Resnick) persuasively dissented, observing that the law under *Losito* did not require a plaintiff to sue the primary-tortfeasor employee/agent. *See id.* at ¶ 34 (Pfeifer, J., dissenting). Justice Pfeifer stated that protecting an employer's/principal's rights to subrogation and indemnification was not the plaintiff's responsibility, especially because the employer/principal may bring other defendants into the action through Civ.R. 14. *Comer* at ¶ 34-36 (Pfeifer, J. dissenting).

{¶ 40} Four years later, this court decided *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, in which we clearly stated that a plaintiff may choose to proceed against only an employer/principal:

> As we explained in *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994), "[g]enerally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior." *Id.*, citing *Councell v. Douglas*, 163 Ohio St. 292, 295-296, 126 N.E.2d 597 (1955). Similarly, in *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 553 N.E.2d 1038 (1990), we stated that "[i]t is a

fundamental maxim of law that a person cannot be held liable, other than derivatively, for another's negligence. * * * [T]he most common form of derivative or vicarious liability is that imposed by the law of agency, through the doctrine of respondeat superior." *Id.* at 255, 553 N.E.2d 1038, *overruled on other grounds by Clark*, 68 Ohio St.3d at 444-445, 628 N.E.2d 46. This doctrine of liability depends on the existence of control by a principal (or master) over an agent (or servant), terms that we have used interchangeably. *Hanson v. Kynast*, 24 Ohio St.3d 171, 173, 494 N.E.2d 1091 (1986).

In *Losito v. Kruse*, 136 Ohio St. 183, 24 N.E.2d 705 (1940), we discussed the respective liabilities of a master and servant, stating, "For the wrong of a servant acting within the scope of his authority, the plaintiff has a right of action against either the master or the servant, or against both, in separate actions, as a judgment against one is no bar to an action or judgment against the other until one judgment is satisfied." *Id.* at 187, 24 N.E.2d 705, citing *Maple v. Cincinnati, Hamilton & Dayton RR. Co.*, 40 Ohio St. 313 (1883). *See also State ex rel. Flagg v. Bedford*, 7 Ohio St.2d 45, 47-48, 218 N.E.2d 601 (1966) ("This court follows the rule that until the injured party receives full satisfaction, he may sue either the servant, who is primarily liable, or the master, who is secondarily liable, and a mere judgment obtained against the former is not a bar to an action or judgment against the latter"). "The plaintiff, in any event, can have but one satisfaction of his claim." *Losito*, 136 Ohio St. at 187-188, 24 N.E.2d 705.

(Brackets and ellipsis added in *Wuerth*.) *Id.* at ¶ 20-21.

**{¶ 41}** However, also in *Wuerth*, we then slipped once more into appearing to conflate the need for proof of the employee's/agent's negligence and the need to actually sue and obtain a judgment of liability against them:

> Although a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously liable only when an agent could be held directly liable. As we held in *Losito*, for example, "[a] settlement with and release of the servant will exonerate the master. Otherwise, the master would be deprived of his right of reimbursement from the servant, if the claim after settlement with the servant could be enforced against the master." *Id.* at 188, 24 N.E.2d 705, citing *Herron v. Youngstown*, 136 Ohio St. 190, 24 N.E.2d 708 (1940); *Bello v. Cleveland*, 106 Ohio St. 94, 138 N.E. 526 (1922); *Brown v. Louisburg*, 126 N.C. 701, 36 S.E. 166 (1900). Similarly, in *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, we recognized that "[t]he liability for the tortious conduct flows through the agent by virtue of the agency relationship to the principal. *If there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions*." (Emphasis added.) *Id.* at ¶ 20, citing *Losito* and *Herron*. *See also Munson v. United States*, 380 F.2d 976, 979 (6th Cir.1967) (applying Ohio law and stating that "the master's sole liability depends upon a finding of liability on the part of the servant, so he cannot be held accountable where there is no such finding").

(Brackets added in *Wuerth*.) *Id.* at ¶ 22.

**{¶ 42}** In *Wuerth*, we held that "a law firm does not engage in the practice of law and therefore cannot commit legal malpractice directly and that a law firm is not vicariously liable for legal malpractice unless one of its principals or associates is liable for legal malpractice." *Id.* at ¶ 2. Thus, we held that absent any underlying malpractice by its members or associates, a law firm cannot be liable for malpractice. But the certified question that this court answered in *Wuerth* was whether a law firm could be liable for malpractice when "all of the relevant principals and employees ha[d] either been dismissed from the lawsuit *or were never sued in the first instance*." (Emphasis added.) *Id.* at ¶ 1. Apparently, because of this ambiguity, the last part of the question addressed in *Wuerth* is read by the majority today to justify disposing of actions for reasons other than on the merits when the plaintiff failed to maintain an action against the employee/agent and only sued the employer/principal. *See also Rush v. Univ. of Cincinnati Physicians, Inc.*, 2016-Ohio-947, 62 N.E.3d 583, ¶ 22-26 (1st Dist.).

**{¶ 43}** In this case, the only reason that Dr. Bisesi is not still a defendant in Clawson's lawsuit is that Clawson apparently could not figure out where to perfect service of the complaint on him. There appears to be little dispute that Dr. Bisesi was an employee of Heights Chiropractic, and Clawson may be able to prove that Dr. Bisesi was negligent and caused her injury while working within the scope of his employment for Heights Chiropractic. The sole reason that the trial court granted summary judgment to Heights Chiropractic was Clawson's inability to obtain a judgment against Dr. Bisesi due to her failure to perfect service on him. But what if Clawson had never sued Dr. Bisesi at all? That would have been perfectly permissible under our precedent prior to the majority's decision today, and there would have been no need for Clawson to even attempt service. If Heights Chiropractic were concerned about its ability to seek indemnification from Dr. Bisesi, it could have "cause[d] a summons and complaint to be served upon" him under Civ.R. 14(A).

**{¶ 44}** I would refrain from expanding this court's decision in *Wuerth* as the majority does today. Rather, I would hold, consistent with Chief Justice Moyer's concurring opinion in *Wuerth* (with which a majority of this court—Justices Pfeifer, Lanzinger, and O'Connor, and Judge Mary DeGenaro, sitting by assignment—concurred) that *Wuerth* stands for only the uncontroversial proposition that a law firm cannot be directly liable for malpractice when its principals and associates did not commit malpractice, because a law firm, itself, does not engage in the practice of law. *See Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, at ¶ 27, 35 (Moyer, C.J., concurring). I would overrule *Comer*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, and I would clarify *Wuerth* so it is clear that with respect to vicarious-liability cases,

> "[f]or the wrong of a servant acting within the scope of his authority, the plaintiff has a right of action against either the master or the servant, or against both, in separate actions, as a judgment against one is no bar to an action or judgment against the other until one judgment is satisfied."

*Id.* at ¶ 21, quoting *Losito*, 136 Ohio St. at 187, 24 N.E.2d 705.

**{¶ 45}** Our caselaw should be consistent, so as to avoid the illogical dichotomy that an employee/agent who has caused the plaintiff's harm need not be sued for vicarious liability to attach to the employer/principal, but that if the employee/agent is sued and there is a failure of service, then the procedural bar to obtaining a judgment against the employee/agent is, in and of itself, fatal to a claim of vicarious liability against the employer/principal.

## Conclusion

**{¶ 46}** Over a century of our caselaw has established that an injured plaintiff need not sue the employee/agent that caused the harm in order for the plaintiff to

sue and prevail against the employer/principal vicariously. Of course, to prevail against the employer/principal, the plaintiff must prove the requisite wrongdoing by the employee/agent. But actually maintaining a lawsuit and obtaining a judgment against the employee/agent is not the same as proving negligence or wrongdoing on the part of the employee/agent. Technical or procedural defects in litigation such as failure of service that prevent a judgment against an employee/agent do not prevent a showing of negligence or wrongdoing or an action against the employer/principal.

{¶ 47} Clawson is entitled to show negligence by Dr. Bisesi for the purposes of establishing the vicarious liability of Dr. Bisesi's employer, Heights Chiropractic, without making Dr. Bisesi a party to the action. If Heights Chiropractic had desired that Dr. Bisesi be a party to the action, for example for indemnity purposes, Heights Chiropractic could have joined him to the action as a third-party defendant under Civ.R. 14(A). That Clawson did not obtain service of the complaint on Dr. Bisesi should not be a trap to bar the vicarious liability of Dr. Bisesi's employer.

{¶ 48} I respectfully dissent.

DONNELLY and STEWART, JJ., concur in the foregoing opinion.

———————

Staton, Fisher & Conboy, L.L.C., P.J. Conboy II, and James C. Staton, for appellee.

Patsfall, Yeager & Pflum, L.L.C., Charles J. Davis, and Jacob E. Bischoff, for appellant.

Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Louis E. Grube, urging affirmance for amicus curiae Ohio Association of Justice.

Bricker & Eckler, L.L.P., Victoria Flinn McCurdy, Anne Marie Sferra, and Christopher T. Page, urging reversal for amici curiae Ohio Hospital Association, Ohio State Medical Association, Ohio Osteopathic Association, Ohio State

Chiropractic Association, Ohio Alliance for Civil Justice, Ohio Radiological Society, Ohio Insurance Institute, and Academy of Medicine of Cleveland & Northern Ohio.

_____