[Cite as *Johnson v. Mercy Health Care, St. Vincent Med. Ctr.*, 2025-Ohio-1157.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Jasman L. Johnson

Appellant

v.

Mercy Health Care, St.
Vincent Medical Center

Appellee

Court of Appeals No.  L-24-1107

Trial Court No.  CI0202304533

**DECISION AND JUDGMENT**

Decided:  March 31, 2025

* * * * *

Drew R. Massé and Jonathan M. Ashton, for appellant.

Julia Smith Wiley and Zachary G. Lemon, for appellee.

* * * * *

**MAYLE, J.**

{¶ 1} Plaintiff-appellant, Jasman L. Johnson, appeals the April 5, 2024 judgment of the Lucas County Court of Common Pleas, granting judgment on the pleadings in favor of defendant-appellee, Mercy Health Care St. Vincent Medical Center.  For the following reasons, we reverse the trial court judgment.

## I. Background

**{¶ 2}** On May 27, 2022, Johnson filed a complaint against Mercy, alleging that Mercy's employees departed from the standard of care by failing to prevent her from falling out of bed during a seizure she experienced on December 7, 2020, while a patient at the hospital. Johnson asserted that she suffered physical and emotional injury and claimed that Mercy was vicariously liable for its employees' negligence, negligence per se, and statutory violations. Johnson further alleged that "[p]ursuant to R.C. 2305.113, 180 day letters were sent by Plaintiff, to Defendant on December 2, 2021."

**{¶ 3}** On December 7, 2022, Johnson voluntarily dismissed her complaint without prejudice under Civ.R. 41(A)(1)(a). She refiled her complaint on December 5, 2023, this time attaching two affidavits of merit. In the first affidavit, a physician opined that "inadequate preventative care" caused Johnson's injuries. In the second affidavit, a nurse averred that the treatment rendered by the nurses and auxiliary staff deviated from the accepted standard of care. Mercy filed a timely answer asserting several affirmative defenses, including that Johnson had failed to file her claim within the appropriate statute of limitations.

**{¶ 4}** On February 29, 2024, Mercy moved for judgment on the pleadings, arguing that Johnson's complaint was time-barred. It maintained that Johnson's complaint asserted claims against the hospital for respondeat superior liability based on the conduct of its individual employees, thus Mercy's liability depended on the primary liability of those individuals. Mercy claimed that Johnson's 180-day letter to the hospital did not extend the statute of limitations for suing the individual employees, and by the time

2.

Johnson filed suit against the hospital, the statute of limitations for suing the individual employees had expired. It insisted that because no individual employee could be held primarily liable, the claim against Mercy for vicarious liability was extinguished. Mercy emphasized that it was not claiming that the individual employees needed to be named as defendants; it claimed only that the individuals needed to be *capable* of being sued at the time the complaint was filed. Because the statute of limitations had expired as to the individual employees, it insisted, they were not capable of being sued and the hospital could no longer be held vicariously liable.

{¶ 5} Johnson opposed Mercy's motion, arguing that under principles of vicarious liability, she was permitted to sue Mercy, the individual providers employed by Mercy, or both. Johnson contended that she preserved the timeliness of her claims by sending a 180-day letter to Mercy and timely filing her complaint. She denied that her failure to send 180-day letters to individual providers barred her action against the hospital.

{¶ 6} In a judgment journalized on April 5, 2024, the trial court granted Mercy's motion for judgment on the pleadings. It held that Johnson's claims were barred by the statute of limitations set forth in R.C. 2305.113. The court agreed with Mercy that because Johnson did not send 180-day letters to the individual providers who treated her, the statute of limitations for suing those individuals expired on December 7, 2021. Given that Mercy's liability was premised on the primary liability of the individual providers, the court concluded that when Johnson sued the hospital on May 27, 2022, no individual provider could possibly be held primarily liable for the negligent acts. As such, the hospital could no longer be held vicariously liable.

3.

**{¶ 7}** Johnson appealed. She assigns the following error for our review:

The trial court erred when it granted Appellee Mercy Health-St. Vincent Medical Center's judgment on the pleadings.

## II. Law and Analysis

**{¶ 8}** Johnson's arguments essentially boil down to three points: (1) a plaintiff bringing a medical claim arising from care rendered by a non-physician hospital employee may sue the employee, the hospital, or both; (2) Mercy's position is an improper extension of a line of Ohio Supreme Court cases that govern actions involving claims for "malpractice" and are inapplicable to claims arising from treatment provided by non-physician hospital employees; and (3) at least one other Ohio court—the Tenth District—has held that where a hospital receives a timely 180-day letter, there is no need to also send one to a non-physician hospital employee.

**{¶ 9}** Mercy argues that to extend the statute of limitations for suing the hospital, the plain language of R.C. 2305.113(B)(1) also required Johnson to send a 180-day letter "to the person who is the subject of the claim." It maintains that Johnson could proceed against the secondarily-liable hospital only if, at the time of suit, there remained a viable claim against the primarily-liable employee. The hospital concedes that Johnson was not required to *sue* the individual employees, but it insists that she must have had the choice to bring suit against those employees "at the time she file[d] suit." While Mercy claims that its position is not based on the line of Ohio Supreme Court cases identified by Johnson, it nevertheless cites each of those cases in support of its position. Mercy urges

4.

this court not to follow the Tenth District and discounts that case as "abandon[ing] the plain language of R.C. 2305.113 and ignor[ing] Supreme Court of Ohio precedent."

## A. Civ.R. 12(C)

{¶ 10} Under Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In considering a Civ.R. 12(C) motion, the trial court may review only "the complaint and the answer as well as any material incorporated by reference or attached as exhibits to those pleadings." *Walker v. City of Toledo*, 2017-Ohio-416, ¶ 19 (6th Dist.). "Dismissal is appropriate under Civ.R. 12(C) when (1) the court construes as true, and in favor of the nonmoving party, the material allegations in the complaint and all reasonable inferences to be drawn from those allegations and (2) it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief." *Reister v. Gardner*, 2020-Ohio-5484, ¶ 17. We review the trial court's judgment de novo. *Id*.

{¶ 11} It appears that contrary to Civ.R. 12(C), the trial court looked beyond the face of the pleadings when it found that the primarily-liable employees of the hospital were not served with 180-day letters under R.C. 2305.113(B)(1). The parties do not raise or dispute this issue, however. We will therefore address the substance of the parties' positions.

5.

**B. The Evolution of Ohio Supreme Court Caselaw Involving Vicarious Liability for Malpractice**

{¶ 12} Under the doctrine of respondeat superior, a master may be liable for injuries caused solely by the negligent act of his servant. *Losito v. Kruse*, 136 Ohio St. 183 (1940), paragraph one of the syllabus. In this situation, the servant will be primarily liable to the injured party, while the master will be secondarily liable. *Id.* The injured party may elect to sue the primarily-liable servant, the secondarily-liable master, or both. *Id.* at paragraph two of the syllabus.

{¶ 13} Mercy concedes that Johnson was not required to sue any individual employee of the hospital. It claims, however, that because the statute of limitations applicable to a claim for derivative liability is the same as that applicable to claims against the primarily-liable agent, *Doe v. First United Methodist Church,* 68 Ohio St.3d 531 (1994), Johnson could not maintain her action against the hospital unless she *could* maintain an action against its individual employees.

{¶ 14} Although not addressing the precise issue here, there is a line of Ohio Supreme Court case law—cited at length by both parties and the trial court—that addresses vicarious liability in malpractice actions. Those cases help set the stage for our ultimate conclusion that malpractice actions against physicians (and lawyers) are treated differently than medical claims against non-physician hospital employees, and medical claims against non-physician hospital employees do not require service of a 180-day letter on the individual non-physician employee in order to preserve the statute of limitations for suing the employer-hospital.

6.

{¶ 15} In *Comer v. Risko,* 2005-Ohio-4559, ¶ 1, the Court addressed whether "a viable claim exists against a hospital under a theory of agency by estoppel for the negligence of an independent-contractor physician when the physician cannot be made a party because the statute of limitations has expired." The Court held that "agency by estoppel is a derivative claim of vicarious liability whereby the liability of the hospital must flow through the independent-contractor physician." *Id.* at ¶ 2. "Consequently, there can be no viable claim for agency by estoppel if the statute of limitations against the independent-contractor physician has expired." *Id.*

{¶ 16} In *Comer,* the plaintiff underwent chest x-rays at Knox Hospital in 1998. Two radiologists read the x-rays and failed to mention in their reports the presence of an enlarged mass. In 1999, the plaintiff underwent a third chest x-ray where doctors detected the mass and diagnosed plaintiff with carcinoma. The plaintiff sued the hospital based on a theory of agency by estoppel, but did not sue the two radiologists who read the 1998 x-rays. The hospital moved for summary judgment on the basis that no viable claim existed against the hospital because the statute of limitations against the primary tortfeasors—the radiologists—had expired. The trial court granted the motion and dismissed the hospital as a defendant. The court of appeals reversed, holding that "'a plaintiff may pursue a claim based upon agency by estoppel against a hospital even if it has not named the independent contractor tortfeasor as a party and/or a claim against the tortfeasor is not viable, if the hospital meets the criteria of [*Clark v. Southview,* 68 Ohio St.3d 435 (1994)].'" *Comer* at ¶ 6, citing *Comer v. Risko,* 2003-Ohio-7272, ¶ 20 (5th Dist.).

7.

{¶ 17} On appeal to the Ohio Supreme Court, the hospital argued that "a hospital's liability for the actions of an independent-contractor physician is based upon vicarious liability and must flow through the independent physician." *Comer,* 2005-Ohio-4559, at ¶ 11. Thus, the hospital argued, a new and direct cause of action imposing primary liability on the hospital would violate the principles of agency that underlie vicarious liability. And "if the underlying liability of the independent contractor is extinguished, it follows that the hospital's secondary liability is likewise extinguished." *Id.*

{¶ 18} The Ohio Supreme Court agreed with the hospital. It held that "agency by estoppel is a derivative claim of vicarious liability whereby the liability of the hospital must flow through the independent-contractor physician." *Id.* at ¶ 28. "[I]f the independent contractor is not and cannot be liable because of the expiration of the statute of limitations, no potential liability exists to flow through to the secondary party, i.e., the hospital, under an agency theory." *Id.* at ¶ 27.

{¶ 19} Four years later, in *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth,* 2009-Ohio-3601, the Court decided a similar issue involving a claim of attorney malpractice. In *Wuerth,* the plaintiff filed a legal malpractice action in federal court against its attorney and the attorney's law firm. The trial court dismissed the attorney from the case because he was not sued within the one-year statute of limitations. Because the plaintiff no longer had a viable claim against the attorney, the court also dismissed the action against the law firm, reasoning that because no cognizable claim existed against the agent, the firm—as principal—could not be held vicariously liable. On appeal, the Sixth Circuit certified the following question for resolution by the Ohio Supreme Court:

8.

"Under Ohio law, can a legal malpractice claim be maintained directly against a law firm when all of the relevant principals and employees have either been dismissed from the lawsuit or were never sued in the first instance?" *Id.* at ¶ 1. The Ohio Supreme Court concluded that "a law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice." *Id.* at ¶ 26. Thus, the failure to timely sue the attorney precluded the plaintiff from recovering against the firm.

{¶ 20} In *Moore v. Mt. Carmel Health System,* 2020-Ohio-4113, the plaintiff in a medical-malpractice action properly extended the deadline for filing suit by sending 180-day letters to the doctor (the primarily-liable agent) and the hospital and medical practice (who the plaintiff alleged were vicariously liable). He timely filed suit, but failed to perfect service on the doctor within one year as required by Civ.R. 3(A). He voluntarily dismissed his complaint, and refiled under the time allowed under R.C. 2305.19(A). The Court held that because the plaintiff did not timely perfect service on the physician in the first action, the claim against him had not "commenced" within the statute of limitations and was, therefore, time-barred when it was refiled; the saving statute could not revive the claim. Because the plaintiff no longer had a viable claim against the physician, the Court concluded that the hospital and practice could no longer be vicariously liable for the doctor's malpractice.

{¶ 21} In 2022, in *Clawson v. Hts. Chiropractic Physicians, L.L.C.,* 2022-Ohio-4154, the Ohio Supreme Court extended *Wuerth* to apply to medical malpractice actions. There, plaintiff sued her treating chiropractor and the practice that employed him. She

9.

failed to timely perfect service on the chiropractor and he was dismissed from the action. The practice argued that because a cognizable claim no longer existed against the chiropractor, it could not be held vicariously liable for his malpractice. The Court agreed with the practice. It held that "the rule stated in *Wuerth* applies equally to claims of vicarious liability for medical malpractice." *Id.* at ¶ 32. It found that because the plaintiff failed to timely serve the chiropractor, the statute of limitations against him had expired and the claim against him was extinguished by operation of law. As a result, his employer could not be held vicariously liable for his alleged malpractice. *Id.* at ¶ 33.

{¶ 22} Importantly, the Court emphasized that "the rule stated in *Wuerth* applies equally to claims of vicarious liability for *medical malpractice*." (Emphasis added.) *Clawson* at ¶ 32. The Ohio Supreme Court carefully crafted its decision in *Clawson* to apply only to actions for "malpractice," as the term is used at common law. Johnson's claim alleges negligence by nurses and other non-physician employees of the hospital. While a nurse's negligence can form the basis for a "medical claim" as defined in R.C. 2305.113(E)(3), a nurse *cannot* commit "malpractice." The only type of agent that can commit malpractice is a lawyer or physician.[1]

{¶ 23} In *Wuerth*, the Court acknowledged that it has "traditionally taken a narrow view of who may commit malpractice." *Wuerth* at ¶ 15. It reiterated the often-recognized principle that under Ohio common law, "'malpractice is limited to the negligence of physicians and attorneys.'" *Id.,* citing *Thompson v. Community Mental*

---

[1] A chiropractor is a physician under R.C. 4734.15(D).

*Health Ctrs. of Warren*, 71 Ohio St.3d 194, 195 (1994); *Richardson v. Doe,* 176 Ohio St. 370, 372-373 (1964); *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 179-180 (1989). Although "the term malpractice is sometimes used loosely to refer to the negligence of a member of any professional group . . . legally and technically, it is still subject to the limited common-law definition." *Hocking Conservancy Dist. v. Dodson-Lindblom Assoc., Inc.,* 62 Ohio St.2d 195, 197-98 (1980). *See, e.g. Lombard v. Good Samaritan Med. Ctr.,* 69 Ohio St.2d 471 (1982), syllabus (the conduct of hospital employees, including nurses and laboratory technicians, does not fall within the common-law definition of "malpractice"); *Richardson v. Doe*, 176 Ohio St. 370, 373 (1964) (a claim against a nurse who cared for a hospital patient is not a malpractice claim); *Ramage v. Cent. Ohio Emergency Serv., Inc.,* 64 Ohio St.3d 97, 102 (1992) ("[A]n action filed against a nurse in his or her professional capacity does not fall within the traditional definition of "malpractice[.]") A careful review of *Clawson* makes clear that it extended *Wuerth* to apply to claims involving vicarious liability for *malpractice*, whether legal or medical. It did not change the basic principles for holding a principal vicariously liable for the conduct of its non-physician (or non-attorney) agents—i.e., that it can sue the principal, the agent, or both.[2]

{¶ 24} Again, Mercy does not claim that Johnson needed to sue the individual hospital employees. It concedes that a plaintiff may sue the employee, the hospital, or

---

[2] To the extent that another panel of this court held differently in *Green v. Luxe Laser Ctr.,* 2025-Ohio-682 (6th Dist.), we disagree with its conclusion for the reasons explained in this decision.

11.

both. But the distinctions made by the Court in *Wuerth* and *Clawson* help explain why a hospital may be sued after receiving a 180-day letter even where the plaintiff did not also send a 180-day letter to the allegedly-negligent non-physician employee—someone who does not need to be made a party to the suit. To the extent that the professional-agent must be named in a malpractice action, *malpractice* actions are simply treated differently than medical claims. As further explained below, so long as a 180-day letter has been sent to the hospital the plaintiff *intends* to sue, the statute of limitations does not need to be similarly extended as to the non-physician employee whom the plaintiff does *not* intend to sue.

### C. R.C. 2305.113(B)(1)

{¶ 25} Mercy contends that R.C. 2305.113(B)(1) instructs that "the individual employee" must be served a 180-day letter if the plaintiff intends to pursue a claim against the hospital more than one year after the cause of action accrued. Otherwise, it insists, there is no cognizable claim against the agent and, therefore, no basis for vicarious liability against the principal.

{¶ 26} R.C. 2305.113(B)(1) provides as follows:

> If prior to the expiration of the one-year period specified in division (A) of this section, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.

{¶ 27} Contrary to Mercy's assertion, R.C. 2305.113(B)(1) does not say that "the individual employee" must be served. To avail him or herself of an additional 180 days

12.

to file a medical claim, R.C. 2305.113(B)(1) requires the plaintiff to send a 180-day letter to the person "who is the subject of that claim." A "medical claim" is expressly defined to include "*any* claim that is asserted in *any* civil action against. . . *a hospital*[.]" (Emphasis added.) R.C. 2305.113(E)(3). If the plaintiff sends the letter in a manner that complies with R.C. 2305.113(B)(2), he or she has 180 additional days to commence an action "against the person notified." R.C. 2305.113(B)(1) does not require a plaintiff to send a letter to both the person against whom he or she is considering filing a medical claim, *and* persons against whom he or she is *not* considering filing a medical claim.[3] The statute only requires notice to the person "who is the subject of *that* claim"—i.e. the specific "medical … claim" that the claimant "is considering bringing an action upon[.]" R.C. 2305.113(B)(1). Here, "that claim" is a "medical claim" *against a* hospital pursuant to R.C. 2305.113(E)(3).

{¶ 28} Also contrary to Mercy's assertion, there is no Ohio Supreme Court case requiring service of a 180-day letter on an agent-nurse where the plaintiff chooses to bring a claim against only the principal-hospital. The cases Mercy cites involve *physician* care, which we have already explained is treated differently than negligence allegedly committed by non-physicians.

{¶ 29} *Harris v. Mt. Sinai Med. Ctr.,* 2007-Ohio-5587, illustrates that non-physicians are treated differently. In *Harris*, a jury rendered a verdict against the hospital

---

[3] A hospital must be a "person" for purposes of R.C. 2305.113(B)(1), otherwise a plaintiff could extend the statute of limitations by 180 days by sending notice to a nurse but not to the hospital.

13.

and other providers for injuries a child sustained during labor and delivery. The hospital moved for judgment notwithstanding the verdict, in part because the plaintiff did not sue the independent-contractor physician whose care was at issue. The Court acknowledged that "'there can be no viable claim for agency by estoppel if the statute of limitations against the independent contractor physician has expired.'" *Id.* at ¶ 44, quoting *Comer,* 2005-Ohio-4559, ¶ 28. It recognized that "'a direct claim against a hospital premised solely upon the negligence of an agent who cannot be found liable' would be contrary to basic agency principles." *Id.,* quoting *Comer* at ¶ 25. Nevertheless, the Court found that the hospital's motion for JNOV was properly denied because the doctrine of agency by estoppel could also apply "based upon the allegedly negligent actions of the nurses attending [the child's] birth." *Id.* at ¶ 45. The fact that a physician must be sued in order to hold the principal liable, while a claim against a hospital can proceed without the nurse being a party, suggests that the Ohio Supreme Court would conclude that the failure to serve a nurse with a 180-day letter does not preclude a plaintiff from suing the secondarily-liable hospital who *did* receive the 180-day letter, even if that suit is filed during the additional 180 days permitted under R.C. 2305.113(B)(1).

{¶ 30} The Tenth District reached this conclusion and rejected the same argument in *Staples v. OhioHealth Corp.,* 2020-Ohio-4578, ¶ 25 (10th Dist.). It held that the failure to serve a nurse with a 180-day letter did not bar plaintiff's vicarious liability action against the principal. Mercy argues that the court in *Staples* failed to explain why it "abandoned the plain language of R.C. 2305.113 and ignored Supreme Court of Ohio precedent requiring service of a 180-day letter on the individual employee in order to

14.

extend the statute of limitations for that person." But for the reasons we have already explained, neither the plain language of R.C. 2305.113 nor Ohio Supreme Court case law dictates a different result.

{¶ 31} It is patently illogical to interpret R.C. 2305.113(B)(1) as requiring a plaintiff's attorney to send 180-day letters to nurses, technicians, orderlies, dieticians, etc., informing them that he or she is considering bringing an action against them when, in fact, the attorney has *no* intention of doing so. For one, this interpretation would create a serious ethical dilemma for the attorney. *See, e.g.,* Prof.Cond.R. 4.1(a) ("In the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person."). But even more concerning is the effect such a strained statutory interpretation would have on the courts, hospital employees, and the healthcare industry itself—which shows that Mercy's interpretation serves no logical purpose whatsoever.

{¶ 32} Requiring plaintiffs to send 180-day letters to employees they do not intend to sue—that nonetheless state that the plaintiff "is considering bringing an action" against those employees, as necessary to comply with R.C. 2305.113(B)(1)—would cause unnecessary anxiety for hospital employees. This, in turn, would escalate litigation costs for hospitals because hospital employees may not feel comfortable being represented by the hospital's attorneys when they perceive that they face a risk of incurring individual liability; hospital employees may feel it necessary to carry their own insurance, injecting additional lawyers and claims adjusters into the mix (not to mention the expense of premiums); the duty to report adverse outcomes to practitioner data banks may be

15.

unnecessarily triggered by the participation in litigation of non-physician employees; and overall, nurses, technicians, and others may be deterred from seeking employment in hospitals for fear of liability, exacerbating already-existing staffing shortages.[4]

{¶ 33} Finally, although not argued in its brief, Mercy articulated at oral argument that if a plaintiff sues the hospital during the 180-day period under R.C. 2305.113(B)(1), but does not also preserve the statute with respect to the individual nurse, the hospital would lose the right to seek indemnity against the nurse because the statute of limitations will have expired. This concern is unfounded.

{¶ 34} "As a general rule, an action based on an implied right of indemnity does not accrue until the party seeking indemnity actually suffers a loss." (Emphasis removed.) *Stengel v. Columbus*, 74 Ohio App.3d 608, 613 (10th Dist. 1991). More specifically, a claim for indemnification does not accrue "until judgment has been entered against the defendant, and perhaps not [even] until the judgment has been paid by the defendant." *Lombardo v. Calabrese,* 1982 WL 2514, *2 (8th Dist. Nov. 4, 1982). *See also Moses v. Doctor's Services, Inc.,* 1988 WL 5160, *1 (8th Dist. Jan. 21, 1988) ("The general rule relative to indemnity is that a claim for indemnity based on tort does not accrue and the statute of limitation does not start to run at the time of the commission of the tort or when injury was inflicted or when the suit was filed, but, rather, when the cause of action for the indemnitee's liability is fixed and discharged."). Given that its

---

[4] Also, as a practical matter—especially given the use of electronic medical records—hospitals may easily identify which employees rendered care to the plaintiff and pinpoint the nature of the care rendered.

16.

indemnity claim would not accrue until it suffers loss, Mercy is not barred from seeking indemnity against a negligent employee simply because the plaintiff sued the hospital during the 180-day period allowed by R.C. 2305.113(B)(1), but did not send a 180-day letter to the individual nurse, who was never required to be sued in the first place.

{¶ 35} In sum, R.C. 2305.113(B)(1) does not bar a plaintiff from suing a hospital for the vicarious liability of a non-physician agent merely because he or she did not also send a 180-day letter to the agent. Under the plain language of the statute, Johnson did not need to send a 180-day letter to non-physician hospital employees whom she did not intend to sue merely to preserve her claim against the hospital, who *did* receive the 180-day letter.

### D. The Dissenting Opinion

{¶ 36} The dissent devotes most of its opinion not to addressing the parties' actual positions, but rather to arguing that we have incorrectly concluded that vicarious liability premised on malpractice is distinct from other tort actions. Tucked away in a footnote, the dissenting opinion almost—but not quite—acknowledges that the 180-day letter may play some role here. It concludes however, that even if Johnson's 180-day letter to the hospital was "effective against the employees," the timely-filed action against the hospital nevertheless *became* untimely when Johnson did not also timely sue the employees. But this position ignores the longstanding common-law rule that a party injured by an agent may sue the principal, the agent, or both. *Losito v. Kruse*, 136 Ohio St. at 187. According to the dissent, they must sue everyone. And if they don't, the court *must* dismiss the complaint (under Civ.R. 12(B)(6), 12(C), 56, or otherwise) when the

17.

defendant seeks dismissal after the statute of limitations for the unasserted claim against the agent has passed. This is not Ohio law.

{¶ 37} The dissent's confusion stems from its failure to recognize that claims for *malpractice* uniquely require the agent's participation in the proceedings. Ultimately, this is the upshot of *Wuerth,* 2009-Ohio-3601, *Clawson,* 2022-Ohio-4154, *Comer,* 2005-Ohio-4559, *Harris,* 2007-Ohio-5587, and *Moore,* 2020-Ohio-4113. These cases can be summarized as establishing that to hold a hospital, medical practice, or law firm vicariously liable for a doctor or lawyer's malpractice, (1) the primarily-liable lawyer or doctor must be timely *sued*; (2) the primarily-liable lawyer or doctor must be timely *served*; and (3) the primarily-liable lawyer or doctor must not have been *released* from liability.

{¶ 38} The dissent criticizes our observation that *Clawson* extended *Wuerth* to apply only to medical "malpractice" actions, which we distinguished from simple "medical claims." It maintains that the Court "expressly considered and rejected the proposition that *Wuerth* created a professional-practice exception to respondeat superior liability." The dissent misunderstands this discussion in *Clawson* (Section C, ¶ 22-24). The Court did not make "clear" that there are no distinctions between vicarious liability for malpractice versus other claims. The Court merely explained that employers of lawyers and doctors are not excepted from vicarious liability for their agents' conduct— i.e., there is no "professional-practice exception" to vicarious liability.

{¶ 39} In *Clawson,* Heights Chiropractic argued that there should be a professional-practice exception to the doctrine of respondeat superior liability. In its

18.

brief in the Ohio Supreme Court, Heights Chiropractic observed that an exception to "the general rule" of vicarious liability exists where the agent engages in "a frolic of their own" because in such cases, the employer is not controlling the employee's conduct. It cited case law recognizing that corporations do not practice medicine and claimed that this means that an employer lacks control of professional employees, thereby justifying a "professional malpractice exception" to vicarious liability. It suggested that *Wuerth* contemplated and supported such an exception. Heights Chiropractic was not merely advocating that there should be no vicarious liability where the claim against the professional employee has been extinguished. It was advocating for the Court to establish an exception under which it could not be vicariously liable at all.

{¶ 40} The Court in *Clawson* declined Heights Chiropractic's invitation to create such an exception. This is what the Court meant when it referred to the proposition in *Wuerth* that there is "'no basis for differentiating between a law firm and any other principal to whom Ohio law would apply.'" *Clawson* at ¶ 23, quoting *Wuerth*, at ¶ 24. A law firm (or, as in *Clawson*, an entity through which a physician practices) may be held vicariously liable for its agent's negligence just like any other principal may be held vicariously liable for its agent's negligence—it cannot escape vicarious liability just because lawyers (or doctors) are licensed professionals.

{¶ 41} The dissent also asserts that "*Wuerth's* vicarious-liability analysis reveals no mention of the limited nature of malpractice." In fact, the Court introduced its discussion of vicarious liability by framing the issue, "whether a law firm may be vicariously liable for legal *malpractice* when no individual attorneys are liable or have

19.

been named." (Emphasis added.) *Wuerth* at ¶ 19. In answering this question in the negative, the Court relied on the Restatement of the Law 3d, The Law Governing Lawyers (2000), Section 58, which "indicates that a law firm has no vicarious liability unless at least one principal or employee of the firm is liable." *Id.* at ¶ 24. It quoted— and emphasized:

> "(1) A law firm is subject to civil liability for injury legally caused to a person by any wrongful act or omission of any principal or employee of the firm who was acting in the ordinary course of the firm's business or with actual or apparent authority." . . . "This Section sets forth the vicarious liability of a law firm and its principals. *It presupposes that a firm principal or employee is liable on one or more claims * * ** and considers when the firm itself and each of its principals share in that liability."

(Emphasis in original.) *Id.* at ¶ 25, quoting Restatement of the Law 3d, The Law Governing Lawyers, Section 58, comment *a*. "Based on this authority"—i.e., the Restatement of the Law Governing Lawyers—the Court held that "a law firm may be vicariously liable for *legal malpractice* only when one or more of its principals or associates are liable for *legal malpractice*." (Emphasis added.) *Id.* at ¶ 26. And as we have already explained, *Clawson* extended this principle "to claims of vicarious liability for *medical malpractice*." (Emphasis added.) *Clawson* at ¶ 32. We do not believe the Court would have taken such careful measures to frame its holding so narrowly to legal and medical "malpractice" claims if the Court intended the holding to be applied broadly

20.

to *all* vicarious-liability claims. To do so would require us to ignore the Court's repeated use of this term of art.[5]

{¶ 42} The dissent correctly observes that the Court's analysis in *Wuerth* contained reference to several non-malpractice cases. For example, the Court cited *Losito* for the proposition that "'a settlement with and release of the servant will exonerate the master.'" *Wuerth* at ¶ 22, quoting *Losito* at 188. Recognition of this principle is not incompatible with our view. *Settlement and release* of a servant *would* likely exonerate the master because the plaintiff may have "'but one satisfaction of his claim.'" *Id.* at ¶ 21, quoting *Losito* at 187-188. But more importantly, we think, the Court also reiterated its holding in *Losito* that where a person is injured by an agent acting within the scope of employment, he or she may sue the agent, the principal, or, both. The dissent's view would render this choice entirely illusory because in practice, even where the plaintiff timely sues the principal, the principal would always be entitled to dismissal the moment the statute of limitations expires as to the primarily-liable agent. It seems to us illogical to reiterate this well-established choice while simultaneously eroding it entirely.

{¶ 43} As the dissent points out, the Court also cited *Strock v. Pressnell*, 38 Ohio St.3d 207 (1988). In *Strock,* plaintiff and his wife sought marriage counseling from the defendant-pastor. Instead of mending the plaintiff's marriage, the pastor had an affair with the plaintiff's wife. The Court held that the plaintiff had no cognizable claims

---

[5] The Court mentions "malpractice" 41 times in its 26-paragraph decision in *Wuerth,* and 53 times in its 34-paragraph decision in *Clawson.*

21.

against the pastor for clergy malpractice, breach of fiduciary duty, fraud, misrepresentation, or nondisclosure because "amatory actions" had been abolished in Ohio. Because the plaintiff had no cognizable claims against the pastor, the Court found that the pastor's employer, the church, could not be liable for his conduct under principles of agency, nor could it be directly liable for negligently supervising or training him. There is nothing truly revelatory about this decision—a pastor could not be liable for having consensual sex with the plaintiff's wife, so the church could not be held vicariously or directly liable either. Again, this proposition of law is not incompatible with our conclusions.

{¶ 44} Here, if Johnson had not sent a 180-day letter, but sued the hospital after one year, this would be an easy case—her claim would be barred because the statute of limitations for suing the primarily-liable employees expired before she filed her claim. It would also be an easy case if Johnson's claim had been against a physician—the failure to timely sue the physician would bar her claim against the hospital as untimely. This is where the distinction between "malpractice" actions and other actions becomes important. The plaintiff was not required to sue non-physician hospital employees. This is why interpretation of R.C. 2305.113(B)(1) is essential to resolving this appeal. Nevertheless, the dissenting opinion avoids any substantive discussion of R.C. 2305.113(B)(1).

{¶ 45} Uniquely, as discussed in the preceding section, R.C. 2305.113(B)(1) permits a plaintiff an additional 180 days to sue on a medical claim if he or she serves a 180-day letter that complies with R.C. 2305.113(B)(2). The existence of this procedural

22.

mechanism for giving a plaintiff more time to investigate—and perhaps resolve—a medical claim is the entire premise of Mercy's argument here. Mercy does not argue that the individual providers must be sued; it argues only that they must be capable of being sued at the time the medical claim is filed. This, we submit, requires the interpretation of R.C. 2305.113(B)(1) that we performed earlier in this decision.

{¶ 46} Finally, the newly-effective R.C. 2307.241 now spares plaintiffs the uncertainty created by individual judges differing in their interpretation of Ohio Supreme Court respondeat superior jurisprudence. That statute makes clear all the conclusions we have reached regarding who must be sued where vicarious liability is alleged. And with that, we have come full circle to the only issue that must be decided here: does a plaintiff properly avail herself of the additional 180 days to sue on a medical claim where she has sent a 180-day letter to only the secondarily-liable hospital and not to the primarily-liable non-physician employee. Based on our interpretation of the plain language of R.C. 2305.113(B)(1), we conclude that she did.

{¶ 47} We find Johnson's assignment of error well-taken.

### III. Conclusion

{¶ 48} The trial court erred when it granted judgment on the pleadings and dismissed Johnson's complaint. A plaintiff need not send a 180-day letter to both the hospital and a non-physician employee in order to extend the statute of limitations for bringing a claim for vicarious liability against only the hospital.

23.

**{¶ 49}** We find Johnson's assignment of error well-taken and reverse the April 5, 2024 judgment of the Lucas County Court of Common Pleas.  Mercy is ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.       

_____
JUDGE

Gene A. Zmuda, J.      
CONCUR.

_____
JUDGE

Charles E. Sulek, P.J.      
DISSENTS AND WRITES
SEPARATELY.

**SULEK, P.J., dissenting.**

**{¶ 50}** Respectfully, I dissent.  Under the general rule of respondeat superior liability as articulated by the Ohio Supreme Court in *Clawson v. Hts. Chiropractic Physicians, L.L.C.*, 2022-Ohio-4154, once the underlying claim against Mercy's employees became time-barred, Mercy's vicarious liability for any negligent conduct of those employees was extinguished.  Accordingly, I would affirm the trial court's judgment dismissing Johnson's claim against Mercy.

24.

**{¶ 51}** The majority concludes that because appellant Jasman Johnson's claim is a medical claim rather than a medical malpractice claim, she can sue appellee Mercy Health Care St. Vincent Medical Center for its employees' alleged negligence even though it is undisputed that any direct-liability claim she had against the hospital's employees is time-barred. The majority therefore confines what the Ohio Supreme Court has repeatedly characterized as a general vicarious-liability rule to a special exception that applies only to malpractice claims.

### A. In *Clawson*, the Ohio Supreme Court rejected the premise that different rules apply to vicarious liability for malpractice.

**{¶ 52}** The majority rationalizes its holding by pointing out that professional malpractice can only be committed by certain licensed professionals whereas a medical claim can be brought against other employees in the medical profession. That distinction, however, is inapposite because no special vicarious-liability rules apply to malpractice claims, as the Ohio Supreme Court emphasized in *Clawson*. In that case, the court expressly considered and rejected the proposition that *Wuerth* created a professional-practice exception to respondeat-superior liability. *Id*. at ¶ 22-23, citing *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 2009-Ohio-3601.

**{¶ 53}** In *Clawson*, the employer, Heights Chiropractic, argued that it could not be vicariously liable under "an 'exception to the general rule' of respondeat-superior liability in malpractice cases" created in *Wuerth*, which was that "vicarious liability for malpractice does not survive the extinguishment of a direct claim against an employee who was licensed to provide the allegedly negligent treatment or service." *Id*. at ¶ 22. In

25.

support, Heights Chiropractic pointed to *Wuerth*'s statement that "because only individuals practice medicine, only individuals can commit medical malpractice." *Id*. at ¶ 23. In other words, Heights Chiropractic's position was that under the general rule for respondeat-superior liability, it could be vicariously liable for its employee's ordinary negligence even if any direct claim against the employee was extinguished. *Id*. at ¶ 22-23. However, Heights Chiropractic argued that the general rule did not apply because the claim at issue alleged malpractice, and *Wuerth* created an exception for malpractice claims (the so-called "professional-practice exception"), under which an employer cannot be vicariously liable for its employee's malpractice unless the employee can be liable, because malpractice can only be committed by certain licensed professionals. *Id*.

{¶ 54} Although the Ohio Supreme Court ultimately concluded that Heights Chiropractic could not be vicariously liable, the court rejected its argument and instead concluded that no professional-practice exception to respondeat-superior liability existed. *Id*. at ¶ 23. The court explained that *Wuerth* involved "two distinct issues"—whether the law firm could be vicariously liable for malpractice and whether the law firm could be directly liable for malpractice—and *Wuerth*'s discussion of malpractice was not relevant to vicarious liability whatsoever, as follows:

> This court's discussion in *Wuerth* of the practice of medicine or law as being restricted to licensed individuals, however, related exclusively to the issue [of] whether a law firm could be directly liable for malpractice. *There is no suggestion that either Wuerth's status as an attorney or his law firm's inability to directly commit malpractice informed this court's analysis of the vicarious-liability issue. To the contrary, with respect to vicarious liability, we found 'no basis for differentiating between a law firm and any other principal to whom Ohio law would apply.'* Accordingly, we reject Heights Chiropractic's erroneous premise that *Wuerth* created a professional-

26.

> practice exception to the doctrine of respondeat superior. Because Clawson's only claim against Heights Chiropractic is based on the doctrine of respondeat superior, the fact that Heights Chiropractic cannot directly commit malpractice is irrelevant.

(Emphasis added.) (Citations omitted.) *Id*. The court's reasoning could not be more clear. Wuerth's "status as an attorney"—i.e., a licensed professional who can commit malpractice—was not relevant in determining whether his employer could be vicariously liable for his acts. *Id*.

{¶ 55} Indeed, a review of *Wuerth*'s vicarious-liability analysis reveals no mention of the limited nature of malpractice. *Wuerth* at ¶ 19-26. Instead, the court began its vicarious-liability analysis by reviewing its prior holdings on the derivative nature of vicarious liability, many of which did not involve malpractice claims. *Id*. The court drew heavily from *Losito v. Kruse*, 136 Ohio St. 183 (1940), which concerned an ordinary negligence claim for injuries sustained in a vehicle crash, beginning by quoting the general principle that "for the wrong of a servant acting within the scope of his authority, the plaintiff has a right of action against either the master or the servant, or against both, in separate actions." *Wuerth* at ¶ 21, quoting *Losito* at 187.

{¶ 56} However, this statement presents only part of the general rule for when a principal may be sued for its agent's acts, and the court continued by articulating the general rule in its entirety as follows: "[a]lthough a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously liable only when an agent could be held directly liable." *Id*. at ¶ 22. In support, the court quoted the next part of its opinion in *Losito*, which explained that "[a] settlement with and release of the servant will

27.

exonerate the master.  Otherwise, the master would be deprived of his right of reimbursement from the servant, if the claim after settlement with the servant could be enforced against the master." *Id*. at ¶ 22, quoting *Losito* at 188.

{¶ 57} The court in *Wuerth* then continued by clarifying that "this rule applies not only to claims of respondeat superior, but also to other types of vicarious liability." *Wuerth* at ¶ 23.  In support, the court cited its decision in *Strock v. Pressnell*, 38 Ohio St.3d 207 (1988), which involved claims for negligent supervision and negligent training against a church—not malpractice claims.  *Id*.  The court then concluded that this general rule of vicariously liability applied to the legal malpractice claim at issue, explaining that "[t]here is no basis for differentiating between a law firm and *any other principal* to whom Ohio law would apply." (Emphasis added.)  *Id*. at ¶ 24.

{¶ 58} In short, *Wuerth* reviewed the origins of a general rule of vicarious liability that was first articulated in cases involving ordinary negligence claims, explained how the rule had applied to different forms of vicarious liability, and concluded that there was no reason it would not apply to a legal malpractice claim against a law firm as it would to "any other principal." *Id*. at ¶ 19-26.  *Wuerth* did not develop a new rule in response to the limited nature of malpractice claims, which never even factored into the court's vicarious-liability analysis.  *Id*.; *Clawson* at ¶ 23.

{¶ 59} Indeed, the Ohio Supreme Court applied *Wuerth*'s rule that "a principal is vicariously liable only when an agent could be held directly liable" when considering the vicarious liability of an employer in a non-malpractice case.  *Stolz v. J & B Steel Erectors, Inc.*, 2016-Ohio-1567, ¶ 22, quoting *Wuerth* at ¶ 22.  In *Stolz*, which involved a

workplace injury on a construction site with several subcontractors, the court concluded that "a worker who may be compensated with workers' compensation benefits is prevented from suing a co-employee … and thus the worker cannot seek to hold the co-employee's actual employer vicariously liable in order to recover damages in tort." *Id.*

{¶ 60} Likewise, the Second District applied the rule in *Clawson* and *Wuerth* to a slip-and-fall case. *Badra-Muniz v. Vinyl Carpet Serv. Inc.*, 2024-Ohio-5507, ¶ 31 (2d Dist.). In that case, the plaintiff alleged that he fell and sustained injuries due to the negligence of a subcontractor's employee. *Id.* at ¶ 2. The plaintiff filed suit seeking recovery from the employee as well as the subcontractor under a respondeat-superior theory. *Id.* at ¶ 3. The plaintiff failed to timely perfect service on the employee and the trial court dismissed the claim against the employee as time-barred. *Id.* at ¶ 7. The trial court, citing *Clawson*, granted summary judgment in favor of the subcontractor, holding that the subcontractor could not be vicariously liable for its employee's acts because the claim against the employee was time-barred. *Id.* at ¶ 8, citing *Clawson*, 2022-Ohio-4154. The plaintiff appealed, arguing that in its decisions in *Clawson* and *Wuerth*, the Ohio Supreme Court veered from *Losito*'s rule that an injured party can sue a principal, agent, or both, and therefore the court's holdings in *Clawson* and *Wuerth* must be limited to malpractice claims. *Id.* at ¶ 19. The Second District, after tracing the history of general vicarious liability principles from *Losito* through *Clawson*, concluded that "once liability has been extinguished against an agent due to the expiration of the statute of limitations, as in the case before us, the trial court is required to dismiss the derivative claim against the principal if the principal raises and establishes this defense." *Id.* at ¶ 31. The court

29.

stressed that this was a general principle that was not limited to malpractice claims, explaining that "as the Ohio Supreme Court has emphasized twice, this principle applies to any principal to whom Ohio law would apply." *Id.*, citing *Clawson* at ¶ 32; *Wuerth* at ¶ 24.

{¶ 61} Here, there is no basis for the majority's refusal to apply the general agency rule that the Ohio Supreme Court has determined applies to all vicarious liability claims. It is undisputed that the statute of limitations expired on December 7, 2021 for any direct-liability claims Johnson had against Mercy employees. Accordingly, Mercy employees could not be held directly liable for any claims filed after December 7, 2021. Johnson did not file her initial complaint against Mercy until May 27, 2022, after her direct-liability claims were time-barred.[6] Applying the analysis set forth in *Clawson* and *Wuerth*, because Johnson's claim against Mercy flows from her claim against Mercy employees, and any such claim is time-barred, Mercy cannot be vicariously liable. Mercy is therefore entitled to judgment in its favor.

---

[6] Moreover, even if Johnson's 180-day letter to Mercy could extend the statute of limitations on her direct-liability claims against Mercy employees, the extended statute of limitations would have expired on or about May 31, 2022. It is undisputed that as of February 29, 2024, when Mercy filed its motion for judgment on the pleadings, Johnson had not commenced an action against any Mercy employee asserting any direct-liability claim, and therefore any direct-liability action was time-barred at that time regardless of whether Johnson's 180-day letter was effective against the employees. *See Moore v. Mt. Carmel Health Sys.*, 2020-Ohio-4113, ¶ 1 ("The statute of limitations prohibits an action unless it is 'commenced' prior to the expiration of the statute.").

30.

**B. R.C. 2307.241 does not modify vicarious liability principles.**

{¶ 62} Although not addressed by the majority, Johnson also contends that R.C. 2307.241 (effective Oct. 24, 2024) supports her argument that she may maintain her action against Mercy even though any claim she might have had against a Mercy employee is now time barred. Although she does not suggest that the statute is effective with respect to her claim, which was filed well before the statute's effective date, she argues that the statute is a codification of pre-existing common law rule that a plaintiff may sue a nurse's employer without naming the employer.

{¶ 63} R.C. 2307.241(B)(2)(b) provides that "[a] primarily liable agent, servant, employee, or person is not a necessary party to the tort action alleging respondeat superior or vicarious liability against a secondarily liable principal, master, employer, or other person," unless the action is a malpractice claim and the primarily liable party is one of a list of a specified professionals, such as a physician or chiropractor, that does not include nurses. In addition, the statute provides that "[n]othing in this section modifies the legal principle that the respondeat superior or vicarious liability of a principal, master, employer, or person is derivative of the liability of an agent, servant, employee, or person." R.C. 2307.241(C).

{¶ 64} When interpreting a statute, a court must look to the statute's plain language to determine the legislature's intent. *Beachwood City School Dist. Bd. of Ed. v. Warrensville Hts. City School Dist. Bd. of Ed.*, 2022-Ohio-3071, ¶ 22. "'If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.'" *Buddenberg v. Weisdack*, 2020-Ohio-3832, ¶ 10, quoting

31.

*State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, (1996). Indeed, "courts are forbidden to add a nonexistent provision to the plain language of legislation." *State ex rel. Tjaden v. Geauga Cty. Bd. of Elections*, 2024-Ohio-3396, ¶ 39, quoting *State ex rel. Whitehead v. Sandusky Cty. Bd. of Commrs.*, 2012-Ohio-4837, ¶ 30. " 'Additionally, a court must give effect " ' "to the natural and most obvious import of [a statute's] language, without resorting to subtle and forced constructions." ' " *Buddenberg* at ¶ 10, quoting *Lancaster v. Fairfield Cty. Budget Comm.*, 83 Ohio St.3d 242, 244 (1998), quoting *Slingluff v. Weaver*, 66 Ohio St. 621, 627 (1902), quoting *McCluskey v. Cromwell*, 11 N.Y. 593, 601 (1854).

{¶ 65} Here, R.C. 2307.241(B)(2)(b) specifies which parties are necessary parties to certain types of malpractice actions. A necessary party must be named at the time the action is initiated, or the action is subject to dismissal under Civ.R. 12(B)(7). *See Nationwide Mutual Fire Ins. Co.*, 2006-Ohio-2512, ¶ 24 (12th Dist.); *Net Solutions v. NSI Group, LLC*, 2005-Ohio-5483, ¶ 30 (7th Dist.); *see also State ex rel. Crabbe v. Mun. Savings & Loan Co.*, 111 Ohio St. 178, 189 (1924). No part of R.C. 2307.241 modifies the statute of limitations for malpractice actions against a secondarily liable party. Thus, under R.C. 2307.241(B)(2)(b), if a plaintiff fails to name a primarily liable physician in a malpractice claim against the physician's employer under the doctrine of respondeat superior, the employer may move to dismiss the complaint pursuant to Civ.R. 12(B)(7) without regard to the timeliness of the plaintiff's claim. However, the same would not be true if the primarily liable employee were a nurse.

32.

{¶ 66} Johnson's argument that the statute permits a plaintiff to maintain a malpractice action against a nurse's employer under respondeat superior even after the plaintiff's claim against the nurse is time-barred goes beyond the statute's plain language. Indeed, the statute expressly provides that it does not modify the derivative nature of vicarious liability. R.C. 2307.241(C). Accordingly, although a nurse may not be a necessary party—and therefore need not be named at the time the action is initiated—the liability of the nurse's employer still depends on whether the nurse may be held liable.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.